**Rodney LUBEZNIK,**
**Appellant-Respondent,**

v.

**Lynn Lubeznik LIDDY,**
**Appellee-Petitioner.**

**No. 3–884A233.**

Court of Appeals of Indiana,
Third District.

May 23, 1985.

Rehearing Denied June 19, 1985.

James F. Groves, South Bend, for appellant-respondent.

Fred M. Cuppy, Kathryn D. Schmidt, Thomas, Burke, Dyerly & Cuppy, Merrillville, for appellee-petitioner.

STATON, Presiding Judge.

The marriage of Rodney and Lynn Lubeznik was dissolved on May 27, 1981 and custody of the couple's two daughters was awarded to Lynn pursuant to a Support, Maintenance and Child Custody Agreement executed by the parties and approved by the court.

In the spring of 1984 Lynn notified Rodney that she and her new husband planned to move with the girls to Santa Fe, New Mexico. Rodney filed a petition to modify custody, changing the custody of the girls to him, and later, Lynn filed a petition for permission to remove the children to New Mexico.

The trial court denied Rodney's petition to modify custody and granted Lynn's petition to remove the girls from Indiana. Rodney appeals, presenting the following issues for review:

I. Whether the original custody order was an order for joint custody?

II. Whether granting the petition for permission to relocate was a modification of the original custody order?

III. Whether the trial court abused its discretion in granting the petition to relocate and in denying the petition to modify custody?

After an evidentiary hearing on both petitions the trial court incorporated the following findings in its order:

"The Court now finds that there has not been a showing by Rodney Lubeznik of a showing by said Petition of a change of circumstances so substantial and continuing so as to make the existing custody order unreasonable and further that there has not been a showing that said change of custody would be in the best interest of said minor children. The Petition for Modification of Custody should be denied.

The Court now finds that the proposed move of Lynn (Lubeznik) Liddy to the State of New Mexico is reasonable and that it is in the best interest of the minor children herein that they remain in the custody of Lynn (Lubeznik) Liddy and take up residence with her in the State of New Mexico effective no sooner than the end of the children's present school year.

The Court further finds that provisions of the Decree of Dissolution regarding the education and religious training of said minor children in the Jewish religion

are integral parts of said Decree and should remain in full force and effect to the extent consistent with this Order."

Rodney argues that the trial court erred in not requiring Lynn to make a showing of substantial and continuing changed circumstances to support her petition to relocate. He contends that even though the dissolution decree and custody agreement did not contain the term joint custody,[1] the intent of the agreement and the course of dealing by the parties amounts to a contractual and de facto joint custody order. The petition to relocate, therefore, constitutes a request to modify custody and requires the strict showing mandated by IC 31-1-11.5-22(d)[2] for modification of custody orders.

We have set forth the pertinent portions of the custody agreement below:

"5. Under the terms of the Decree of Dissolution, custody of the minor children has been awarded to the Petitioner. Nevertheless, the parties agree on the general principle that both parents should have the opportunity to spend time with their children in an approximately equal amount. The right of visitation should be, and it is, granted to Respondent with a view toward accomplishing the stated objective of approximately equal time for the children with each parent. The right of visitation shall include the right to have temporary custody of the children for such occasions as weekend visits living in Respondent's home, weekday and overnight visits, summertime and school vacation visits, and other holidays or special occasions agreeable to both Petitioner and Respondent.

\*     \*     \*     \*     \*     \*

---

1. The dissolution decree provides:

"7. Both Petitioner and Respondent are fit and proper persons to have the care, custody, and control of the minor children, but at the present time it would be more appropriate to award custody of said children to the Petitioner, subject to the terms and conditions of the Support, Maintenance, and Child Custody Agreement."

2. IC 31-1-11.5-22(d) (Burns Code 1980 Repl.).

"The court[,] in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable. In making its determination, the court shall not hear evidence on matters occurring prior to the last custody proceeding between the parties unless such matters relate to a change of circumstances." (Original brackets.)

Petitioner agrees not to relocate the residence of the children outside the State of Indiana under any circumstances so long as they are minors without the express permission of the Court and reasonable notice in advance to the Respondent.

The parties agree that all extracurricular activities are the joint responsibility and concern of both parents. To that end, the parties agree they shall consult, with an equal voice, on all matters affecting the welfare of the children, including their school and after-school activities and specifically including the following areas of activity: Enrollment in any summer program or after-school program of duration, such as a summertime program, a seasonable program or a month-long program which might, for example, include lessons, instruction or supervision in academically-oriented or recreationally-oriented activities.

The parties agree that medical and dental decisions about the children (other than day-to-day or emergency decisions) should be reached after consultation between the two parents, with each parent having an equal voice in the matter.

The parties agree on the importance of religious training in the development of the children. Petitioner agrees to continue to raise the children in accordance with the practices, tenets and beliefs of the Jewish religion and to contribute in every way possible to their ethnic and cultural identification as members of the American Jewish Community. To accomplish that objective, Petitioner agrees that because of Respondent's background and religious beliefs, the Respondent shall have the primary responsibility for decisions affecting the children in their religious and ethnic activities. These activities shall include, but are not necessarily limited to, the following:

(1) The decision as to when and where to attend Sunday religious school.

(2) The decision as to when, where and under what circumstances to study the Hebrew language and to receive other parochial education and instruction.

(3) The decision as to when, where and how to undertake the instruction necessary to become a barmitzvah and to become confirmed in the Jewish faith.

(4) The decision as to when, where, how and under what circumstances to observe the High Holy Days of the Jewish faith including the holiday observances of Rosh Hashonah, Yom Kippur, Passover, Purim and Chanukah.

(5) The decision as to when, how, and under what circumstances there should be periodic observances of the Jewish sabbath.

The spirit and intent of this Agreement as it pertains to custody and visitation, the physical, psychological and emotional development of the children, is that the children and the Respondent should have as much as opportunity to spend time together as the children and the Petitioner, and that the children should have the same opportunity to enjoy the company and presence of the Respondent as well as the Petitioner; that both parents will consult and reach agreement on the important matters affecting the daily lives and development of their children such as school and extracurricular activities; and that in the matter of religious training and background, the voice of the Respondent shall be the decisive vote."

Both parties testified that in the three and one half years since their divorce the agreement had been carefully adhered to with the girls spending substantial time at their father's house, including most afternoons after school. Rodney provided a housekeeper/baby sitter in his home for the after-school hours until Lynn picked the girls up after work. The girls often spent one or more nights per week at their father's house where they had their own rooms and separate wardrobes. Visitation was very flexible and spontaneous due to the cooperative efforts of both parties. The girls received instruction in the Jewish

faith and attended Sunday school and services at the synagogue. Lynn encouraged their religious activities and provided transportation to and from the synagogue. Rodney was, per the agreement, very involved in the girls' activities, arranging for various lessons, overseeing their religious education and so forth. The paternal grandparents, aunt, uncle and cousins all lived within walking distance of Rodney's home and the girls had ample opportunity to visit with these relatives.

Lynn and her husband, Dennis, decided to move to Santa Fe primarily for economic reasons. They had both held executive positions in a bank which was in the process of being sold. Lynn and her husband were terminated from their positions by the new management. Because of their continued status as substantial shareholders of the bank Lynn and Dennis would be foreclosed from seeking employment in other area banks due to a conflict of interest. Moreover Dennis desired to seek career opportunities in the commercial real estate field—a field of allegedly limited potential in the northern Indiana area. The couple had vacationed several times in the Santa Fe area, exploring employment opportunities as well as the cultural and social environment. At the time of the hearing Dennis had a job offer from a firm in Santa Fe which he had postponed accepting due to the instant litigation.

## I.

### Joint Custody

At the time of the parties' dissolution, the custody statute, IC 31–1–11.5–21 (Burns Code 1980 Repl.), did not give the court the discretion to award custody of children jointly to the divorcing parents. The statute was amended in 1983[3] to allow the trial court, upon consideration of certain enumerated factors, to award legal custody of a child jointly if the court found it to be in the best interest of the child. IC 31–1–11.5–21(f), (g). (Burns Code 1984 Supp.). Rodney argues, nevertheless, that the agreement with Lynn that was incorporated in the dissolution decree should be read as a joint custody agreement. He cites *Lord v. Lord* (1982), Ind.App., 443 N.E.2d 847 for the proposition that joint custody under the earlier version of the statute would be possible where the parties have agreed in writing to such an arrangement. The court's pronouncement in *Lord* is purely dicta since no written agreement was at issue in that case. The court reversed an award of joint custody, holding that the trial court must award custody of the children to either the father or the mother as it determines to be in the best interest of the child. *Id.* at 849.

Whether *Lord* would permit joint custody pursuant to a written agreement is beside the point since the written agreement here is not for joint custody. Custody is unambiguously awarded to Lynn. The agreement is a truly commendable model of cooperation between parents obviously interested in the lives and well-being of their children. It speaks, however, in terms of visitation for Rodney, not joint custody. Though Lynn's absolute custody of the girls is limited by the provisions which give Rodney a voice in certain decisions concerning the girls' upbringing, we think this falls squarely within the statutory provision which gives the custodian total authority over all such matters "except as otherwise agreed by the parties in writing...." IC 31–1–11.5–21(b) (Burns Code 1980 Repl.). The parties agreed to very liberal and flexible visitation with a great deal of cooperation on child rearing decisions, but the court determined that "it would be more appropriate to award custody ... to the petitioner, subject to the terms and conditions of the [agreement]." We simply cannot construe that as an award of joint custody—de facto or otherwise.

## II.

### Modification

Rodney next contends that because Lynn's petition for permission to relocate

3. P.L. 283–1983, § 1.

was in fact a petition for modification of custody, she was required to show changed circumstances so substantial and continuing as to make the existing custody order unreasonable. IC 31–1–11.5–22(d). Because we hold that custody was not joint, we do not agree that Lynn was seeking a modification of the original custody order; therefore we cannot agree that Lynn had the burden to show changed circumstances which made the original order unreasonable. Rodney cites us to no authority which holds that a custodial parent seeking to relocate the children must make such a showing.

■ The trial court is vested with broad discretion in all matters of child custody. *In re Osborne* (1977), 174 Ind.App. 599, 369 N.E.2d 653, 656. The crucial consideration is always the best interest of the children. *Schwartz v. Schwartz* (1976), 170 Ind.App. 241, 351 N.E.2d 900, 901. It is not our task on review to reweigh the evidence considered by the trial court. Rodney essentially asks us to do that when he contends that there was no reason for Lynn to relocate with her husband and the children. There was evidence of probative value from which the trial court could have found that Lynn and Dennis were making a carefully considered move for financial and other reasons. Moreover, the court could have found that the children's welfare had been considered and would not suffer by allowing the move. On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal. *Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807, 812. Although there was evidence that the girls enjoyed a comfortable environment shifting back and forth between Rodney's and Lynn's homes in Michigan City, there was nothing to suggest that their welfare was threatened by remaining in their mother's custody and living in a new town. We cannot say that the trial court abused its discretion in granting the petition to relocate.

■ Rodney, on the other hand, was seeking a modification of custody by his petition asking the court to award custody of the girls to him. As the non-custodial parent seeking such a change he was required to show that changed circumstances of a substantial and continuing nature had rendered the prior order no longer in the best interests of the children. *Adams v. Purtlebaugh* (1951), 230 Ind. 269, 102 N.E.2d 499, 501; *Pribush v. Roy* (1983), Ind.App., 456 N.E.2d 747, 749.

■ It is for the trial judge to determine whether the change is so decisive as to make the existing custody order unreasonable. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885, 888. Our function is merely to determine whether there is substantial probative evidence supporting the conclusion of the trial court. *Id.* Our courts have several times reaffirmed the principle that a move by the custodial parent is not *per se* a substantially changed circumstance as to make that parent's continued custody unreasonable. *Poret v. Martin, supra* at 890; *Marshall v. Reeves, supra* at 813; *In re Marriage of Davis* (1982), Ind.App., 441 N.E.2d 719, 722. The fact that the custodial parent's move makes visitation inconvenient is not a sufficient change necessitating a change of custody. *Moutaw v. Moutaw* (1981), Ind.App., 420 N.E.2d 1294, 1299. Rodney presented a great deal of evidence concerning the favorable custody and visitation arrangements under the original order. There was no evidence, however, that the girls were anything but well cared for by Lynn. On the contrary, Rodney has no complaints with Lynn's care of the children. It is not this Court's function to speculate on how a change of environment might affect the children. The trial court had before it evidence that the girls' mother and her husband provided a fine home for the girls and cared for them admirably. They had explored educational and religious opportunities for the girls in Santa Fe and agreed to continue to consult with Rodney regarding these matters.

The evidence supports the trial court's decision to leave custody with Lynn and

deny Rodney's petition for modification. Finding no abuse of discretion, we affirm the trial court's orders.

HOFFMAN and GARRARD, JJ., concur.