**Theresa HOOS, Respondent–Appellant,**

v.

**Benjamin F. HOOS,
Petitioner–Appellee.**

**No. 46A03–8910–CV–421.**

Court of Appeals of Indiana,
Third District.

Nov. 19, 1990.

W. Jonathan Forker, LaPorte, for respondent-appellant.

Arthur L. Roule, Jr., LaPorte, for petitioner-appellee.

GARRARD, Judge.

The parties to this action had their marriage dissolved in 1984. Custody of their daughter was awarded to the mother and the father was granted generous visitation rights.

In 1988 the mother remarried. On May 10, 1989 she filed with the court her notice of intent to change residence to Garden Grove, California, as dictated by IC 31–1–11.5–21.1, and had the matter set for hearing for May 25th. The father appeared and petitioned to have custody of the parties' daughter. Hearing was held on May 25, 1989 and the court subsequently entered its written findings determining that the mother's petition to relocate her permanent residence should be denied, the father's petition for change in custody should be denied and the existing custody order should be modified to provide that the mother's custodial rights be continued subject to the condition that she reside within 100 miles of LaPorte County, absent a further order of the court. Judgment was entered on the findings and the mother appeals. She contends the court committed an abuse of discretion in refusing her petition and entering its order.

Pursuant to IC 31–1–11.5–21.1, if an individual who has been awarded custody in a dissolution action intends to move to a residence (other than one specified in the existing custody order) that is outside Indiana or 100 miles or more from the individual's present county of residence, that individual must file notice to that effect as provided in the statute. Then upon the request of either party, the court shall set the matter for hearing "for the purposes of reviewing

and modifying[,] if appropriate[,] the existing custody, visitation and support orders."

◼ In considering that provision, this court has determined that it does not technically impose upon the party giving notice of a desire to move, the obligation of establishing a change in circumstances so substantial as to render the existing custody order unreasonable as provided in IC 31–1–11.5–22(d). *Lubeznik v. Liddy* (1985), Ind. App., 477 N.E.2d 947, 952. That is true in large part because the party giving notice is not seeking a change in custody; he or she is seeking to maintain custody in a different location. At the same time, mere inconvenience to the child and non-custodial parent resulting from a change of residence will not constitute a basis for changing custody to the other parent. *Pea v. Pea* (1986), Ind.App., 498 N.E.2d 110.

As our supreme court held in *Poret v. Martin* (1982), Ind., 434 N.E.2d 885, 890:

[A] custodial parent's move out of state is not *per se* a substantial change in circumstances such as to make the parent's continued custody unreasonable.... Whether or not any given change is substantial must be determined in the context of the surrounding circumstances.

Furthermore, it is well settled that the trial court is afforded substantial discretion in determining child custody matters and its decision is reviewable only for an abuse of discretion. *Poret, supra*, 434 N.E.2d at 887.

◼ In turning to the circumstances of this appeal we are compelled to recognize that it presents one of the critical social dilemmas of our time. The mobility of our society, the requirements of employment and the frequency of divorce and remarriage confront us with a reality that forbids easy answer. It is nevertheless a problem that devolves upon our trial courts for decision, if not solution. For these very reasons it is imperative that courts carefully weigh and consider the competing factors in each case. It provides immeasurable assistance to a reviewing court when the court then sets forth those considerations in reaching its decision.

Commissioner King did so in this case in a thoughtfully drafted memorandum which was expressly incorporated into the findings. Those considerations, which are supported by the evidence, may be summarized as follows:

The daughter is a normal well-adjusted nine year old and both parents have played a positive role in her upbringing.

Both the mother and her husband were employed in LaPorte at the time the husband accepted employment in California. While the present husband provided a history of continuous employment, it was unstable in nature. He had held four different employments since 1984. No evidence was introduced as to his earnings in LaPorte before accepting the California job or of his earnings there, although it appeared that he was employed as manager of the company's plant in Orange County, California. No evidence was introduced of the mother's earnings in LaPorte. While her husband's employer had indicated it would help her seek employment in California, at the time of the hearing she had no prospective employment there.

In addition to the obvious visitation obstacle for the father and daughter posed by such a move, no relatives of the mother or the child reside in California. On the other hand, many relatives of both the mother and father reside in the LaPorte area, including his parents, two brothers, three sisters, his aunts and uncles and the mother's grandmother and aunts and uncles. The child enjoyed a particularly strong relationship with her paternal grandmother and two paternal aunts.

The commissioner concluded that the relocation would substantially impact the stability of the daughter's life by uprooting her from her home, community, school, friends and relatives. It would substantially interfere with the child's strong and affectionate relationship with her father and grandmother, and this would be exacerbated by the lack of any relatives in California.

The commissioner further concluded that there was no evidence to establish that the

relocation was motivated by financial reasons, family concerns, health matters or social concerns. Moreover, the commissioner expressed concern that the husband's history of employment instability suggested that the upheaval in the daughter's life occasioned by the proposed move might only be compounded by subsequent events.

Thus, there were findings sustained by the evidence that the proposed move to a residence approximately two thousand miles away would have a substantial adverse impact on the child's relationships, not only with her father, but with other close relatives on both the father's and mother's sides of the family. On the other hand, the evidence supporting the desire to move failed to establish any substantial motivation over and above the husband's personal desire to accept the proffered employment and the mother's desire to accompany him. *Compare Lubeznik, supra,* where the evidence supported a determination that the mother and her husband were making "a carefully considered move for financial and other reasons." 477 N.E.2d at 952.

We conclude that the court's refusal to grant the mother's petition is not clearly against the logic and circumstances before the court. *Poret, supra.* Accordingly, there was no abuse of discretion.

■ Finally, we note that the court did modify the prior custody order to provide that the mother's continued custody be subject to the condition that she reside within 100 miles of LaPorte County, absent further order of the court.

The mother suffered no prejudice from this modification since it actually gives her more latitude than IC 31–1–11.5–21.1, which requires notice and opportunity for hearing if a custodial parent desires to move either outside of Indiana or more than a hundred miles away from the existing county of residence.

We find no error.

Affirmed.

HOFFMAN, P.J., concurs.

SHIELDS, P.J., dissents and files separate opinion.

SHIELDS, Presiding Judge, dissenting.

I dissent. The trial court's judgment modifying the prior custody order is contrary to law because it contravenes IC 31–1–11.5–21.1 (1988) and because there is no evidence "there has been such a substantial and continuing change of circumstances that the existing custody order has been rendered unreasonable." Record at 11.

The trial court's judgment, in relevant part, reads:

    2. Wife's petition to relocate her permanent residence to Garden Grove, California, as custodial parent should be denied ...

    3. It has been established that there has been such a substantial and continuing change of circumstances that the existing custody order has been rendered unreasonable ...

    4. The existing custody order should be modified to provide that wife's custodial rights be subject to the condition that she reside within 100 miles of LaPorte County, absent further order of this court ...

    5. Husband's application for sole legal and physical custody should be denied in light of the status quo contemplated in these findings....

Record at 11–12.

The trial court, on its own motion, made findings of fact. Restated, these findings are:

    1. Visitation between Daughter and Father has gone very well and the relationship between Daughter and Father is close; Father is an excellent father and he and Daughter are "the best of friends" and "love each other." Record at 15.

    2. Mother remarried Husband on July 2, 1988; Mother and Husband continued to reside at the parties former marital residence until approximately May 1, 1989 when Husband relocated his residence to California to accept employment as a plant manager for the Great Western Carpet and

Cushion Company. Prior to accepting the position in California, Husband was employed at Modine, in LaPorte, for approximately a year, a portion of which was prior to Mother and Husband's marriage. Before his employment at Modine, Husband's employment was of a "continuous but unstable nature, including a two to three year stint with Recticel Foam from 1984 to 1986 in LaPorte, followed by a one-month stint with Charles Levy, [as] a truck dispatcher, [and] a four month period with Great Western Carpet and Cushion as a plant manager in California." Record at 14–15.

3. Wife filed her notice of intent to relocate her residence to California to accompany Husband to the site of his employment. In the meantime she continues to be employed in LaPorte.

4. Neither Father nor Mother has relatives in California. However, both Father and Mother have many relatives in the LaPorte area. Father's entire family resides in the LaPorte area and Daughter is "well-acquainted" with and loves these relatives; she particularly enjoys a strong relationship with her paternal grandmother and two paternal aunts.

The statute in question reads:
(a) If an individual who has been awarded custody of a child ... intends to move to a residence ... that is outside Indiana or one hundred (100) miles or more from the individual's county of residence, that individual must file a notice of intent with the clerk of the court....
(b) Upon request of either party, the court shall set the matter down for a hearing for the purposes of reviewing and modifying if appropriate the custody, visitation, and support orders. The court shall take into account the distance involved in the proposed change of residence and the hardship and expense involved for noncustodial parents to exercise such rights, in determining whether to modify the custody, visitation, and support orders.

IC 31–1–11.5–21.1 (1988).

Subsection (a) requires the custodial parent to file with the court clerk a notice of intent to move the custodial parent's residence outside Indiana or 100 or more miles away in Indiana from the original county of residence—nothing more, nothing less.

Subsection (b) is equally simple. While IC 31–1–11.5–21.1 provides either parent with the statutory authority to seek review and modification of custody, visitation and support, subsection (b) supplements IC 31–1–11.5–21 by enumerating additional factors which the trial court shall consider in the event modification of custody is sought because of an intended relocation: the distance involved in the relocation and the hardship and expense for the noncustodial parent in exercising his or her visitation rights.

Hence, the procedure contemplated in IC 31–1–11.5–21 is unique in that it necessarily results in an advisory opinion. If the relocation notice prompts the noncustodial parent to file a petition to modify based upon the stated relocation, the issue litigated is whether the relocation constitutes such a continuing and substantial change in circumstances as to render the existing order unreasonable. If the answer is yes, the statute contemplates the trial court's judgment will be that if the stated relocation occurs, custody will be modified; if it does not, custody will remain unchanged.

It should be emphasized the statute limits the issue before the trial court to the stated relocation. Therefore, any general restriction on relocation, such as the one here, is contrary to law because it is outside the litigatable issues. Further, it contravenes the legislative policy in IC 31–1–11.5–21.1 that a custodial parent who intends to relocate need only file notice of an intent to relocate and not a petition to modify. In other words, under the statute the responsibility to petition for a change of custody is unchanged, it continues to rest with the noncustodial parent. Thus, the restriction on Mother's relocation is contrary to law because the restriction which prohibits Mother from moving 100 miles or more from LaPorte County without petitioning the court to modify the custody order requires her, rather than Father, to petition for a modification in the event of a future proposed relocation.

Thus, in the future Mother will have the burden of proving a change in circumstances so substantial and continuing as to render the limiting condition in the existing order unreasonable. This result also contravenes the legislative policy that a custodial parent need only give notice of intent to relocate his or her residence and requires the noncustodial parent to file a petition to modify custody.

Even when we construe the trial court's judgment to conform to the statutory scheme the judgment is contrary to law. The judgment is reasonably construed as prohibiting Mother from making the immediate stated relocation to Garden Grove, California, with Daughter, by providing that it will constitute "such a substantial and continuing change of circumstances that the existing custody order has been rendered unreasonable," Record at 11, and if it occurs, custody is placed with Father.

The trial court's determination "wife's contemplated relocation to California is a substantial and continuing change of circumstances" (Record at 16) is based upon the conclusion the relocation will wreak significant havoc on the stability of Daughter's life because:

1. The move would significantly impact upon Father's visitation rights and, in turn, upon the father-daughter relationship and Daughter would be stripped of her "strong and affectionate relationship" with Father. Record at 16.

2. Daughter would be "uprooted from her home, community, school and friends." Record at 16.

3. Daughter would be denied her "longstanding and close relationship with her paternal grandmother and her many extended family members who reside in the LaPorte area." Record at 16–17.

4. "There is no evidence to establish that such relocation is motivated by financial reasons, family concerns, health matters, or social concerns.... [T]here is no indication that any financial need necessitated the move or relative financial gain would inure to wife and [Husband] by virtue of relocation. Rather the evidence simply establishes that wife is following her new husband to California, elevating that relationship over the best interests of the minor child." Record at 18.

5. Husband's "history of employment instability. Indeed, he previously was employed in California by the same company he now has joined; after four months, he left that employ to return to Indiana because of the geographical separation from his present wife and three children from a previous marriage which resides in this locale." Record at 18.

I do not question but that Daughter's life would suffer an upheaval with a move to California as the trial court concluded in first three of the foregoing numbered paragraphs. However, that is not the question.

As the majority acknowledges, IC 31–1–11.5–21.1 does not obviate the burden of the petitioner for a change of custody to establish a change of circumstances so substantial and continuing as to make the existing custody order unreasonable before custody can be modified. Neither does it negate the principle of law that a custodial parent's mere move out of state does not constitute such a substantial and continuing change. Similarly, mere inconvenience to the child and noncustodial parent resulting from the change will not constitute a basis for changing custody. However, the majority only pays lip service to these precedents because it affirms the trial court's judgment although there is no evidence the uprooting necessarily caused by Daughter's relocation, whether to California or to Michigan or Illinois but within ninety-nine miles from LaPorte County, would have an adverse effect upon the Daughter such as would justify the conclusion the move is not in Daughter's best interests.

. The relocation would necessarily result in Daughter being uprooted from her home, community, school, friends and relatives. However, while the uprooting is unfortunate, it is not sufficient to render the present custody order unreasonable without evidence the upheaval would have a deleterious effect upon Daughter. There is no such evidence here. The trial court

merely assumes the deleterious effect despite the evidence Mother has played "a positive role in [Daughter's] upbringing." Record at 16. A reasonable inference is Mother's efforts have helped ensure the excellent relationship that exists between Father and Daughter. Ironically, the trial court's judgment penalizes Mother for her efforts to create an atmosphere where the father-daughter relationship could flourish despite the deterioration of the marital relationship between Father and Mother. Furthermore, the trial court found Daughter "is a normal, well-adjusted and healthy nine-year-old child who receives B's and C's in school." Record at 16. Certainly this finding is more indicative of Daughter's ability to adjust than to not do so. It also does not appear the trial court gave any consideration of the effect upon Daughter of being removed from Mother's custody with whom she has been for years.

Paragraph 4 also reveals the trial court's judgment is based upon an error of law. Father was petitioning for the change in custody; Father had the burden of proof. Mother did not have the burden to prove, as the trial court implicitly held, a "worthy" reason for the relocation such as "financial reasons, family concerns, health matters, or social concerns." Record at 18. Father totally failed to meet this burden; not only did he fail to offer any evidence the relocation would be detrimental to Daughter he also failed to established the relocation was motivated by any inappropriate factor such as to deny Father visitation.

The trial court's reliance upon Husband's employment history is also insufficient as a matter of law to constitute the required continuous and substantial change in circumstances. Mother married Husband July 2, 1988; consequently, since their marriage, Husband was continuously employed at Moline until he accepted the plant manager position in California. Hence, his employment since marriage to Mother can be considered not only continuous but also stable. In addition, considering the period before the marriage of Mother and Husband, the trial court, like the majority opinion, errs in labeling Husband's employment as unstable because it did so under the erroneous conclusion Mother had the burden of proving the reasons or justification for the change in employment. Father, not Mother, was petitioning for change of custody and had the obligation to prove the circumstances surrounding Husband's employment record that support the conclusion it is unstable. In considering whether Father met his burden of establishing a continuing and substantial change of conditions the stability or instability of Husband's employment history is not a factor.

In conclusion, the circumstances enumerated by the trial court and the majority in support of the trial court's judgment modifying the present custody order to provide Mother's continued custody is conditioned upon her not moving more than 100 miles from LaPorte County, Indiana are either not supported by the record or are based upon an erroneous conclusion of law. I am left with the firm conviction the trial court reached its decision based upon its unsupported opinion the Daughter's relocation to California or anywhere beyond the immediate reach of Father and the "extended family" would not be in the Daughter's best interest—period.

As this court observed in *Walker v. Chatfield* (1990), Ind.App., 553 N.E.2d 490:

We recognize that there will always be changes in circumstances between the initial hearing and subsequent hearings—the child matures, parents may remarry, divorce, move, have more or less income than at the initial hearing, there may be other children added to the family through birth or remarriage that change the relationship of the child to the custodial parent, and so forth.

But what life is all about *is* growth and change. However, these changes, which we take for granted, do not automatically trigger the right of a court to re-examine whether or not one parent might be preferred as a custodian over another, as is the test at the initial hearing. Thus, mere changes that occur as life goes on do not, standing alone, justify a modification of custody. What we look for when we review the trial court's

action is evidence of a decisive and substantial change in circumstances which either establishes the unfitness of the custodial parent or affects the welfare of the child so that it renders the original custodial order unreasonable.

553 N.E.2d at 492. *See also* the dissent of Judge Miller in *Mobley v. Mobley* (1990), Ind.App., 561 N.E.2d 504 with which I agree.

I vote to reverse the decision of the trial court modifying the existing custody order to condition Mother's continued custody upon her continuing to reside within one hundred (100) miles of LaPorte County, Indiana.