Robin LAMB (Formerly Wenning),
Appellant–Petitioner,

v.

Larry N. WENNING, Appellee–
Respondent.

No. 31A01–9104–CV–99.

Court of Appeals of Indiana,
First District.

Dec. 10, 1991.

Linda B. Lorch, Lorch & Naville, New Albany, for appellant-petitioner.

Marcus M. Burgher, Corydon, for appellee-respondent.

ROBERTSON, Judge.

Robin Lamb [Mother] appeals the modification of the child custody order in the decree that dissolved her marriage to Larry N. Wenning [Father]. The trial court modified the child custody order by awarding the father primary physical custody of the parties' son, Jerry. We reverse.

## FACTS

The evidence in this case is largely undisputed. The facts in the light most favorable to the trial court's judgment indicate that the child who is the subject of this action, Jerry, was born to Robin and Larry on June 13, 1983. Jerry's parents were divorced on January 5, 1990 when Jerry was six (6) years old. The agreement, which was merged and incorporated into the divorce decree, provided that both parents would enjoy joint legal custody of Jerry but that Mother would enjoy primary physical custody. Father agreed to pay child support under this agreement.

On January 16, 1990, soon after the divorce was final, Robin filed notice pursuant to Ind.Code 31–1–11.5–21.1 that she and Jerry would be moving to Missouri. Robin had been living with and was anticipating marriage to Steve Lamb who owns a farm in Missouri. Robin had hoped that she, Steve, and Jerry could move to Missouri and live on Steve's farm. Robin married Lamb on March 7, 1990.

On January 23, 1990, Father filed his petition to modify the custody decree, which petition reads in pertinent part as follows:

2. That there has been a substantial change of circumstances in that [Father] has just recently been informed by [Mother] of her intention of moving with the parties' minor child out of the State of Indiana and more than one hundred (100) miles from her present county of residence.

3. That it would be in the best interest of said minor child for the child to remain in his familiar surroundings, to include his community, school, church, friends and family.

On March 7, 1990, Father filed a petition for the emergency custody of Jerry. The trial court held a hearing on this emergency petition on March 8, 1990 (the day after Robin's and Steve's marriage) and conducted an in-camera interview with Jerry on March 9, 1990. The court granted temporary physical custody of Jerry to Father until the end of the Spring school term and temporary physical custody of Jerry to Mother for the summer.

The hearing on Father's petition for the custody modification was held on August 7, 1990. The trial court heard evidence and conducted another in-camera interview with Jerry. The evidence in the light most favorable to the trial court's judgment indicates that Jerry's mother's move to Missouri would take Jerry some 418 miles away from his father, his paternal grandparents, and other family members, and would make visitation with these persons more expensive and difficult. The move would prevent Jerry from attending the church that he and his father were in the habit of attending on a regular basis. The move would also require Jerry to change

schools and baseball teams. Jerry would also be required to make new friends in Missouri. Evidence was also presented that the parents' ability to cooperate to promote Jerry's best interests had diminished since the onset of the present litigation.

Evidence indicated that during the summer visitation Jerry spent with his mother on the farm in Missouri, they lived in a two-bedroom, two-bathroom mobile home. The mobile home was located on the wettest spot on the farm and the sewer line ran above the ground. Mother and Jerry spent one weekend, or at least one overnight, each in the months of June and July in Shelbyville, Indiana. Also, in July, Mother and Jerry spent another weekend or at least an overnight in Mount Vernon and Champagne, Illinois. Mother traveled with Jerry and Lamb to go to the aid of the Lamb's father when he was ill, even though Lamb has several siblings who could have gone to the aid of their father instead. Jerry did not attend church with his mother during the summer. The only children Jerry had to play with on the farm were the children of a hired farm-hand.

Jerry was able to play on a baseball team during his summer visitation in Missouri. Mother and her husband were in the process of remodeling the farmhouse on the farm in Missouri and plan to move into it when the remodeling is finished.

In his brief, the father sets out the following "verbal order" entered by the trial court at the conclusion of evidence:

I'm not [sic] gonna change custody. It will remain joint, but I am going to find that it is in the best interest of the child at this point that he stay with his father and I am going to order that physical custody or primary visitation will be with the father ...

The trial court made the following written entry into the docket (pertinent part only):

Comes now the court, on [Father's] Petition to Modify and being duly advised in the premises, now finds that there has been a substantial change of circumstances and hereby modifies the Dissolution Decree as entered on January 5, 1990, as follows:

1. That the court hereby Orders that joint custody shall remain the same with the Father to have physical possessory custody of [Jerry].

## DECISION

The law in this area should be well-settled as it is governed by statute and years of experience. Indiana Code 31-1-11.5-22(d) provides that:

The court in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable.

In an initial custody determination, the trial court presumes that both parents are equally entitled to custody. *Walker v. Chatfield* (1990), Ind.App., 553 N.E.2d 490. The initial custody determination is based on the trial court's determination of which parent would be better. *Id.* However, a subsequent petition to modify custody is not a vehicle to relitigate the initial custody determination as to who might make the better parent. *Id.* In a subsequent petition to modify custody, the noncustodial parent bears the burden of overcoming the custodial parent's right to continued custody and must make a showing of a change in the custodial home which is of a decisive, substantial, and continuing nature. *Id.*

Our review of a trial court's decision regarding a child custody modification is limited to determining whether the trial court abused its discretion in applying the applicable statutory guidelines. *Smith v. Dawson* (1982), Ind.App., 431 N.E.2d 850. On appeal from a modification of a child custody order, we will not judge the credibility of the witnesses or substitute our judgment for that of the trial court. *Barnett v. Barnett* (1983) Ind.App., 447 N.E.2d 1172. We consider only that evidence which supports the trial court's decision. *Smith*, 431 N.E.2d 850. In reviewing the trial court's determination of custody rights, we will only reverse upon a showing of a manifest abuse of the trial court's

discretion and such abuse will not be found unless the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable and actual deductions to be drawn therefrom. *K.B. v. S.B.* (1981), Ind.App., 415 N.E.2d 749.

■■■ In an action to modify a custody order, the noncustodial parent seeking custody has the burden of establishing that the original or existing custody order has become unreasonable due to a substantial and continuing change in circumstances. *Pribush v. Roy* (1983), Ind.App., 456 N.E.2d 747. The trial judge must consider the evidence with the best interests of the child or children uppermost in his or her mind as the paramount concern. *Id.* It is the effect upon the child which renders any particular change substantial or inconsequential. *Ohman v. Ohman* (1990), Ind. App., 557 N.E.2d 694, *trans. denied.* In order to modify a child custody order, the trial court must determine that the changed circumstances warranting modification are of a decisive nature and such changed circumstances will support a modification order only if the modification is necessary for the welfare of the child or children involved, thereby conclusively establishing that the existing custody order is unreasonable. *Id.* A custody modification may not be supported solely on an extrajudicial in-camera interview with the child. *Simons v. Simons* (1991), Ind.App., 566 N.E.2d 551.

■■■ Whenever the custodial parent intends to move outside of Indiana or 100 miles or more from his or her present residence, that party must file a notice to that effect in the divorce court and send a copy to the noncustodial parent with visitation rights. I.C. 31–1–11.5–21.1. Upon the request of either party, the court shall then set the matter for a hearing for the purposes of reviewing and modifying, *if appropriate,* the custody, visitation, and support orders. *Id.; Smith v. Mobley* (1990) Ind.App., 561 N.E.2d 504 (dissenting opinion of Judge Miller 561 N.E.2d at 509). Indiana Code 31–1–11.5–21.1 was not enacted to punish parents who move, but to provide a means for modifying visitation and support orders which would be made unreasonable because of a long distance move by the custodial parent. *Id.* The custodial parent's decision to move does not trigger a retrial of the original custody determination. *Id.*

■■■ Indiana Code 31–1–11.5–21.1 must be construed in conjunction with (and cannot supplant) I.C. 31–1–11.5–22(d), which, as set out above, requires a showing of a change in circumstances so substantial and continuing as to make the existing custody order unreasonable before custody may be modified. *Pea v. Pea,* (1986), Ind. App., 498 N.E.2d 110, *trans. denied.* The fact that the move makes visitation inconvenient does not of itself warrant the modification of custody. *Lubeznik v. Liddy* (1985), Ind.App., 477 N.E.2d 947, *trans. denied.* The denial of custody solely on the custodial parent's decision to move is improper where the move is made in good faith and out of a desire to improve the material or psychological life of the custodian, so long as the child's interests are not prejudiced thereby. *Sebastian v. Sebastian* (1988), Ind.App., 524 N.E.2d 29 (quoting *H. Clark, The Law of Domestic Relations In the United States* § 20.4, at 515, 516 (2d ed.1987)). The custodial parent's move out of state is not per se a substantial change in circumstances warranting a modification of the custodial arrangement. *Smith,* 561 N.E.2d 504. The mere inconvenience to the child and the noncustodial parent resulting from the custodial parent's move out of state is not a sufficient basis for changing custody to the other parent. *Hoos v. Hoos* (1990), Ind.App., 562 N.E.2d 1292.

■■■ Our function on appeal is to examine the decision of the trial court and determine whether the record discloses evidence or reasonable inferences to be drawn therefrom which serve as a rational basis to support the decision of the trial court. *Walker,* 553 N.E.2d 490. We must reverse a custody modification under two sets of conditions. *Id.* The first such condition is satisfied by a combination of two deficiencies: 1) the failure of the noncustodial par-

ent seeking the custody modification to allege and prove a decisive change in conditions, and 2) the failure of the trial court to enter findings of fact indicating the changes in conditions warranting a modification under the statutory standard. *Id.* Absent such deficiencies, the second basis for a reversal—the abuse of trial court discretion—comes into play. *Id.*

In the present case, the result is the same under either the deficiency in pleadings and findings analysis or the abuse of discretion analysis. The allegations in the father's petition to modify are plainly insufficient to support an action for the modification of custody. In his petition, the father merely asserts that the mother intends to move to Missouri and that it is in Jerry's best interests not to make the move and instead be placed in the custody of his father. In short, there is no allegation, nor has there ever been a serious assertion, that the existing custody arrangement with the mother was unreasonable.

The second deficiency under *Walker* has also been met: the trial court made no findings of fact that support its conclusion that changed circumstances rendered the existing custody arrangement unreasonable. For what its worth, the trial court's "verbal order," as cited by the father in his brief, indicates that the trial court used the wrong standard for a custody modification determination; the "verbal order" indicates that the trial court used the "best interests" standard appropriate for an initial custody determination.

From an exhaustive and exacting review of the evidence in this case, we would observe that all the changed circumstances impacting Jerry's young life are entirely inherent in his mother's decision to move to Missouri to seek a better life for herself and her family. There is absolutely no evidence that indicates that Jerry could not adjust to the move or that the move would have a detrimental impact upon Jerry's welfare. In short, we have found no probative evidence to support the conclusion, necessary to support a custody modifica-tion, that the continued custody of Jerry in his mother is unreasonable.

The present case is remarkably similar factually to the *Smith*, 561 N.E.2d 504, case. In both cases, the trial court stripped a loving, caring, fit mother of her child(ren) merely because she intended to move out of state to seek a better life for herself and her family. In neither case was there even a serious assertion that the existing custody order placing custody in the mother was unreasonable. We agree completely with the rationale of Judge Miller's concurring and dissenting opinion in *Smith* and find it completely applicable to the present case. 561 N.E.2d at 509. We cannot improve upon Judge Miller's opinion, so—rather than setting it out almost in its entirety, we will simply refer our readers to the opinion and incorporate its rationale as our own.

For the foregoing reasons, we hold that the trial court abused its discretion in modifying Jerry's primary physical custody from the mother to the father. The changed circumstances inherent in a move out of the state are simply insufficient as a matter of law to warrant a custody modification. As this court observed in *Walker*, 553 N.E.2d 490:

> We recognize that there will always be changes in circumstances between the initial hearing and subsequent hearings—the child matures, parents may remarry, divorce, move, have more or less income than at the initial hearing, there may be other children added to the family through birth or remarriage that change the relationship of the child to the custodial parent, and so forth.
>
> But what life is all about *is* growth and change. However, these changes, which we take for granted, do not automatically trigger the right of a court to re-examine whether or not one parent might be preferred as a custodian over another, as is the test at the initial hearing. Thus, mere changes that occur as life goes on do not, standing alone, justify a modification of custody. What we look for when we review the trial court's action is evidence of a decisive and sub-

stantial change in circumstances which either establishes the unfitness of the custodial parent or affects the welfare of the child so that it renders the original custodial order unreasonable.

553 N.E.2d at 492. *See also* the dissenting opinions of Judge Miller in *Smith*, 561 N.E.2d at 511, and Judge Shields in *Hoos*, 562 N.E.2d at 1298, 1299, with which this court agrees.

We would observe that this case falls squarely into that all too large of class of cases in which the trial court has erroneously applied the standard applicable to the initial custody determination in an action for the modification of a custody order as in *Simons*, 566 N.E.2d 551; *Ohman*, 557 N.E.2d 694; *Walker*, 553 N.E.2d 490; *Smith*, 561 N.E.2d 504 (concurring and dissenting opinion of Judge Miller), and *Hoos*, 562 N.E.2d 1292 (dissenting opinion of Judge Shields agreeing with Judge Miller's concurring and dissenting opinion in *Smith*, 561 N.E.2d at 509.) Our legislature set the standard for obtaining a modification of a child custody higher than the standard for obtaining an initial award of child custody to effectuate the strong presumption of the custodial parent's right to continued custody, *Walker*, 553 N.E.2d 490, and to prevent the disruptive effect of moving children back and forth between divorced parents. *Dunlap v. Dunlap* (1985), Ind. App., 475 N.E.2d 723; *Smith*, 431 N.E.2d 850. We believe it is very important for us, as the appellate court, to uphold and not ignore the standard prescribed by I.C. 31–1–11.5–22(d) for the purpose of discouraging divorced parents from continuously challenging each other to rematches in an ongoing "parent of the year" contest where the prize is the custody of the child or children. Although our concern is with the children, we must recognize that both parents inevitably suffer from on-going and successive lawsuits involving the custody of their children. We would note that even the greatest heavyweight champions eventually and inevitably suffer brain damage from too many title defenses. However, the best interests of the children, not the desires or claims of the parents, is what is crucial with us. *Wright v. Wright* (1984), Ind.App., 471 N.E.2d 1240, *trans. denied*. In this respect, we would note that only once did Solomon play "chicken" with the baby and the sword in order to determine which custody disposition would effect the best interests of the child. We would surmise that, had Solomon been required to redecide his child custody disposition over and over, the baby would eventually and inevitably have been sliced in half.

We sincerely regret that our reversal of the trial court's modification will inject yet another disruption in Jerry's young life. We also regret that our decision may not be in accordance with Jerry's wishes as they may have been expressed to the trial court in the in-camera interview. However, we hope that our decision will encourage trial courts to apply the standard imposed by I.C. 31–1–11.5–22(d) for the modification of child custody orders and thereby assure that fewer young lives will be disrupted unnecessarily.

We must conclude, as in *Simons*, 566 N.E.2d 551, that the existing custody order was not "broke" and the trial court committed error by attempting to "fix it." The trial court's decision to modify the custody order constitutes an abuse of discretion and must be reversed. We remand to the trial court with instructions to enter orders consistent with this opinion.

Judgment reversed.

RATLIFF, C.J., concurs.

HOFFMAN, J., dissents with separate opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent. The majority opinion overlooks a significant complicating factor in the present case. The original custody order, from which Father sought a modification, awarded joint legal custody to the parties. IND.CODE § 31–1–11.5–21(f) (1988) provides: "'joint legal custody' means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's ed-

ucation, health care, and religious training." Further, the statutory authorization for joint legal custody specifies factors which must be considered prior to such an award:

"(1) the fitness and suitability of each of the persons awarded joint custody;

(2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child and whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(4) whether the persons awarded joint custody live in close proximity to each other and plan to continue to do so; and

(5) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody."

IND.CODE § 31-1-11.5-21(g). Of primary importance, but not determinative of the matter, is a consideration of whether the parties have agreed to a joint legal custody arrangement. *Id.*[1]

The child custody statute, which until a 1983 amendment did not provide for joint custody, also includes guidelines for consideration when making a more traditional custody award to one parent. *See* P.L. 283–1983, Sec. 1. The joint custody guidelines set out above do not precisely mimic the guidelines for a traditional custody award. The legislature specifically acknowledged the special considerations inherent to a determination of the propriety of a joint custody award. Accordingly, the standard for modifying a joint custody award should also reflect the basic differences between modification of a joint custody award and modification of a more traditional custody award.

As noted by the majority, the modification of a custody award requires a finding of a substantial and continuing change of circumstances which render the existing custody order unreasonable. *Schenk v. Schenk* (1991), Ind.App., 564 N.E.2d 973, 977; IND.CODE § 31-1-11.5-22(d) (1990). Further, it is generally true that a move which makes visitation inconvenient will not, standing alone, warrant a modification of custody. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885, 890. However, in the case of joint custody the parties equally share in decision-making regarding the child's upbringing including health care, education, and religion, even where physical custody is not divided equally. Unlike the considerations for awarding custody to an individual parent, when making the initial award of joint custody the court must determine the physical proximity of the parties and whether they intend to remain in close proximity.

The majority compellingly exposes the emotional upheaval that accompanies a sudden change in a custody arrangement. Also as noted by the majority, it is counterproductive to stigmatize a parent as blameworthy for initiating changes, such as a move, which are normal. However, implicitly each parent makes a commitment to abide by the "groundrules" upon which joint custody was awarded. This is especially true of the specific guidelines which must be considered prior to such an award. An interstate move by one joint custodian such as in the present case, would significantly hamper the other joint custodian's ability to share in decisions statutorily awarded to the joint custodians regarding the child's education, health care and religious training.

Remaining mindful of the difference between an initial award of custody and a modification of custody, as noted above the child custody statute treats differently initial awards of sole custody and awards of

---

1. Although the agreement of the parties is not determinative in Indiana, the legislature has deemed an agreement a "primary" consideration prior to an award of joint custody. IND. CODE § 31-1-11.5-21(g). It has been suggested that an equally important factor contributing to the success of a joint custody arrangement is a provision for the eventuality of an interstate move by either of the joint custodians. *See* Annot., Joint Custody of Children (1982), 17 A.L.R.4th 1013, 1017–18, *citing* Bodenheimer, Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications, 65 Cal.L.Rev. 978 (Sept.1977).

joint custody. It follows that a modification of joint custody likewise requires an alternative standard to that employed when a party seeks to modify a sole custody award. When joint custody has been awarded and the parties find themselves litigating an alteration to one of the statutory factors upon which a joint custody award must be based, the trial court should be vested with the discretion to view the underlying factors for the initial award as significant or determinative. Thus, a substantial alteration to one of the factors should support a finding that the alteration would irreparably impair the assumptions upon which a successful and beneficial joint custody award was based, thereby warranting a modification of the joint custody arrangement as in the best interests of the child.

An awareness of the divisiveness innate to dissolution and custody proceedings is reflected in the statutory considerations required prior to an award of joint custody. The considerations attempt to insure that joint custody will not be awarded unless some spirit of cooperation between the parties concerning the best interests of the child is readily apparent. Once joint custody has been awarded, the parties must be able to maintain that spirit of cooperation. The pitfall of awarding and maintaining a joint custody arrangement primarily to placate the parties should be avoided as not in the best interests of the child.

The present case points out the frailties of adhering to the standard for modification of a sole custody award when the modification sought is from a joint custody award. Here, the parties are each fit to act as sole or joint custodians.[2] Neither party has attempted to alter the arrangement in some egregious manner. Also,

neither party has misbehaved regarding the custodial arrangement. Yet, as benign an act as a move may be, in a case such as the present, where the trial court views such an act as a substantial deviation from the factors upon which the joint custody arrangement was premised, a court on review should not indulge a standard ill suited to joint custody in order to impose the existing joint custody arrangement upon the parties and the child. Consequently, I would vote to affirm the trial court's decision modifying primary physical custody of the child to the Father.

---

**2.** The present case is relatively unburdened by considerations of the fitness of the parents to maintain joint custody. *Cf. Drewett v. Drewett* (1988), La.App., 524 So.2d 893 (Louisiana's statutory presumption that continued joint custody is in best interests of children was adequately rebutted by mother's proposed move out of state which would take children from father, home, school and friends, and by evidence of allegations that mother's sister had abused children, and that the parties subjected children to displays of temper and violence); *Burrington v. Howard* (1988), Ind.App., 521 N.E.2d 371, 373 (joint custody modified to sole custody with father where mother's proposed move constituted substantial and continuing change rendering original custody order unreasonable and other contributing factors included perceived indifference to effect of move upon child and mother's and new husband's tendency to place their interests above those of child).