**In re the Marriage of Julie AYLWARD, Appellant–Petitioner,**

v.

**Robert AYLWARD, Appellee– Respondent.**

No. 53A01–9110–CV–306.

Court of Appeals of Indiana, First District.

June 4, 1992.

Marilyn Hartman, Hartman & Paddock, Bloomfield, for appellant–petitioner.

ROBERTSON, Judge.

Julie Aylward appeals the portion of the decree dissolving her marriage to Robert Aylward which relates to the award of joint legal custody of the parties' four (4) children. Julie raises four (4) issues. But because one issue requires us to reverse, we address it only. It is:

Whether the award of joint legal custody constitutes an abuse of discretion?

### FACTS

The facts in the light most favorable to the trial court's judgment indicate that Julie and Robert were married on December 18, 1979 and the petition for dissolution was filed on June 12, 1990. Four (4) children were born of the marriage: B.J.A. and R.E.A., born October 17, 1982 (twins); F.L.A., born December 4, 1984; and S.R.A., born January 21, 1990. Presently, Robert serves in the United States Army and is stationed in Korea. After his tour of duty in Korea is completed, he expects to be stationed in either Kentucky or Georgia.

As noted above, the petition for dissolution was filed on June 12, 1990. On September 26, 1990, the Department of Public Welfare [DPW] initiated proceedings alleging the children to be Children in Need of Services under IND.CODE 31–6–4–3.1 [CHINS proceedings]. At the initial fact-finding hearing in the CHINS action, Julie asserted the children had been sexually molested by their father. Robert appeared at this hearing and asserted the children's physical or mental condition were seriously impaired. In that way, the DPW obtained admissions from both parents that the children were CHINS. There appears to be no dispute that the children suffer from emotional and/or psychological disorders.

The CHINS proceedings were transferred and incorporated into the divorce proceedings by court order.[1] The entire family was subjected to intensive psychological evaluation, counseling, etc. A Guardian Ad Litem was appointed who spent 68 hours interviewing the parents, the children, and the therapists involved.

The CHINS review hearing required three (3) days for the presentation of evi-

---

1. All of the proceedings were held before the Circuit Court Magistrate who submitted her proposed findings and dissolution decree to the Circuit Court judge who expressly approved them and adopted them as the judgment in this case.

dence. Afterwards, the DPW's motion for discharge was granted by the trial court. The trial court, in its decree, ultimately found that the evidence failed to support Julie's accusations that the children had been molested.[2]

Although most of the property disposition was stipulated, the final hearing in the dissolution action required two (2) more days for the presentation of evidence. The record in this appeal consists of 1500 pages contained in six (6) volumes. Julie's motion to file a brief in excess of 50 pages was granted by this court. Julie's statement of the facts in her brief is sixteen (16) pages long.

The trial court awarded the parents joint legal custody. In general, Julie was awarded physical custody of the children during the school year and Robert was awarded physical custody of the children during the summer months. With respect to the award of joint legal custody, the trial court entered the following findings:

9. It is in the best interests of the minor children that the parties should be awarded joint custody of the minor children with physical custody to be divided as set forth below. This finding is based on the following evidence presented at the hearings in this cause:

(a) Robert and Julie are expressing feelings of animosity and distrust toward the other. The children have been exposed, either deliberately or unintentionally, to situations where the absent parent was being discussed in a negative way.

(b) Robert and his parents have had difficulty communicating with the children in person or by telephone due to interference by Julie and some members of her family.

(c) The maternal and paternal grandparents have become embroiled in the conflict between Robert and Julie which has contributed to an ever-widening rift between Robert and Julie. Consequently, the children are deprived of an environment that is healthy for them and one that will support a positive feeling for the absent parent.

(d) Julie's decision to teach [the twins] at home for a two-year period was met with strenuous objection from Robert. Julie did not meet the state requirements for home instruction, and the twins entered school in the 1st grade when they should have been in the 2nd grade.

(e) [The three older children] are now in therapy with Dr. Judith Klein, a psychiatrist. They were initially in therapy with Dr. Susan Rautio–Dietz, a psychologist. Both therapists testified that the children are suffering from psychological and emotional trauma from unknown causes. Dr. Rautio–Dietz testified that she could not explain why the children were traumatized, but she felt that the behaviors of [the two (2) older girls] were consistent with sexual molestation. Dr. Rautio–Dietz then arranged for [these girls] to be examined by a physician who was unable to state conclusively that the children had been sexually molested. Both Dr. Klein and Dr. Rautio–Dietz testified that they were not convinced that either [of these girls] had been sexually molested.

(f) [These two (2) older girls] have stated that they were molested by their father and they have also recanted. At one point, [one of the girls] indicated that she had been molested by her maternal grandfather but later recanted. The Department of Public Welfare investigated the case and determined that there was insufficient evidence to prove that the children had ever been sexually molested. However, both experts felt that the three children were suffering from emotional trauma of unknown cause(s). [The boy] is also suffering from psychological and emotional trauma. There were no allegations of sexual molestation involving [the boy]. However, [the boy] has exhibited violent behavior, especially toward his [twin sister].

---

**2.** Julie specifically attacks the trial court's findings in several respects. However, because we find the trial court's award of joint custody constitutes an abuse of discretion, we need not address these matters.

**1250**

(g) Despite the lack of evidence that the children were sexually molested by their father and considering Julie's agreement and stipulation at the CHINS proceeding involving this family that the children were in need of services for reasons unknown to either party, she has persisted in her belief that [the two (2) older girls] have been molested by their father.

(h) The evidence does not support a finding that the children have been sexually molested by Robert or by any other person. Robert has worked in top security positions in the United States Army and presented security clearance and checks which reveal no instances of moral turpitude before or since he entered military service in 1973.

(i) The animosity and bitterness displayed by the parents is harmful to the children. The children are not divorcing either parent, and they are entitled to the love and companionship of both parents. The joint custodial arrangement is the only feasible arrangement which will permit the children to love and share quality time with each parent.

(j) The Court appointed Judi Chapman as guardian ad litem for the children. Ms. Chapman spent a total of sixty-eight (68) hours interviewing the parents, therapists, and the children. Ms. Chapman said that the children are bonded to both parents. She testified that the constant fighting between the parents is harmful to the children and is not in their best interests.

### DECISION

■ At the outset, we note that Robert has failed to file an appellee's brief. It is well-settled that where no answer brief has been filed, the judgment may be reversed if the appellant's brief presents a prima facie case of error. *National Mut. Ins. Co. v. Eward* (1987), Ind.App., 517 N.E.2d 95. Prima facie error is error at first sight, on first appearance, or on the face of it. *Johnson County Rural Elec. Membership Corp. v. Burnell* (1985), Ind.App., 484 N.E.2d 989. The reason for the prima facie error rule is to protect the Court of Appeals and relieve it from the burden of controverting arguments advanced for reversal, a duty which properly rests upon counsel for appellee. *National Mut. Ins. Co.*, 517 N.E.2d 95.

■ Julie asserts the trial court's imposition of joint legal custody under the present circumstances constitutes an abuse of discretion. We agree.

■ Child custody determinations fall squarely within the discretion of the divorce court and will not be disturbed except for an abuse of discretion. *Walker v. Walker* (1989), Ind.App., 539 N.E.2d 509. On review, we will not reweigh the evidence, adjudge the credibility of the witnesses, nor substitute our judgment for that of the trial court. *Id.* We will not reverse unless we find the trial court's decision is against the logic and effect of the facts and circumstances before the divorce court or the reasonable inferences drawn therefrom. *Id.*

Indiana Code 31–1–11.5–21 governs the disposition of child custody in dissolution actions. It reads, in pertinent part, as follows:

(a) The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there shall be no presumption favoring either parent. The court shall consider all relevant factors including:

(1) the age and sex of the child;

(2) the wishes of the child's parent or parents;

(3) the wishes of the child;

(4) the interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(5) the child's adjustment to his home, school, and community; and

(6) the mental and physical health of all individuals involved.

(b) Except as otherwise agreed by the parties in writing at the time of the custody order, the custodian may determine

the child's upbringing, including his education, health care, and religious training, unless the court finds, after motion by a noncustodial parent, that in the absence of a specific limitation of the custodian's authority, the child's physical health would be endangered or his emotional development significantly impaired.

\* \* \* \* \* \*

(f) The court may award legal custody of a child jointly if the court finds that an award of joint legal custody would be in the best interest of the child. As used in this section, 'joint legal custody' means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training. An award of joint legal custody does not require an equal division of physical custody of the child.

(g) In determining whether an award of joint legal custody would be in the best interest of the child, the court shall consider it a matter of primary, but not determinative importance that the persons awarded joint custody have agreed to an award of joint legal custody. The court shall also consider:

(1) the fitness and suitability of each of the persons awarded joint custody;

(2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child and whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(4) whether the persons awarded joint custody live in close proximity to each other and plan to continue to do so; and

(5) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

In *Walker*, 539 N.E.2d 509, we affirmed an award of joint legal custody imposed over the objections of the mother. We noted that one statutory factor set out above was easily satisfied: the parents lived in close proximity to one another. I.C. 31–1–11.5–21(g)(4). We also noted that the parents demonstrated a willingness and ability to communicate and cooperate in advancing the child's welfare as required by I.C. 31–1–11.5–21(g)(2). We held:

Frankly, we are reluctant to affirm a trial court's order of joint custody when one of the parties objects thereto. [The mother], by appealing this case, makes clear her objections. On the other hand, the statute [I.C. 31–1–11.5–21(f), (g)] gives the trial court the discretion to award joint custody and *we are just as reluctant to reverse a trial court's exercise of that discretion when the evidence does not show a clear abuse thereof by attempting to impose an intolerable situation upon two persons whose relationship has become a battleground.*

\* \* \* \* \* \*

Certainly, there was ample evidence that [the parents] had disagreements and arguments between themselves. (This is not unusual with divorcing couples.) *But, nowhere in the record is evidence of fundamental differences in child rearing philosophies, religious beliefs, or lifestyles. Nowhere is evidence that child rearing became a battleground.* We acknowledge in a sensitive situation such as this that a more careful scrutiny of evidence is necessary. However, *no evidence indicates a major obstruction in the willingness or ability of [the parents] to communicate and cooperate in advancing [the child's] welfare.* On the contrary, they have demonstrated an ability to put aside their own differences in order to cooperate for [the child's] best interests.

539 N.E.2d at 512, 513 (Emphasis added). Similarly, in *Stutz v. Stutz* (1990), Ind. App., 556 N.E.2d 1346, we held the imposition of a joint legal custody arrangement over the objections of the the mother to be an appropriate exercise of divorce court discretion as the record contained no evi-

dence of hostility between the parties (other than on the part of the mother); nor did the record contain evidence of any disagreement between the parents regarding matters relating to the upbringing of the child.

Before joining our court, Judge Barteau cautioned that "a joint custody order may simply provide a framework for the parents to continue the conflict which brought them to divorce in the first place. The conflict would just be focused solely on the children." Barteau and Hopkins, *Joint Custody in Indiana,* 27 Res Gestae 320, 324 (1984).

In the present case, we interpret the trial court's findings justifying its imposition of joint legal custody (as set out in the FACTS section above) as indicating that the trial court imposed joint legal custody *precisely because* the parents have made child rearing a battleground. Even a cursory glance of the voluminous record overwhelmingly supports the conclusion that the parents have made child rearing a battleground. We would be surprised if any member of this family can survive the hostilities.

Moreover, we would note that the parents do not (and do not plan to) live in close proximity to one another as would militate toward an award of joint custody under I.C. 31–1–11.5–21(g)(4). *See also, Walker,* 539 N.E.2d 509. Julie lives in Indiana: Robert lives in Korea and expects to be stationed next in Kentucky or Georgia.

Also, as the trial court's finding, 9(d) set out above, indicates, the parents could not agree with respect to a major decision regarding the twins' education. Over Robert's strenuous objection, Julie insisted on teaching the children at home until it was determined that Julie did not meet state requirements for home instruction.

Our review leaves us with the firm conviction that the trial court's decision constitutes an abuse of discretion as it is against the logic and effect of the facts and circumstances or the reasonable inferences to be drawn therefrom. The evidence overwhelmingly reveals a clear abuse of trial court discretion in that the joint custody award constitutes an imposition of an intolerable situation upon two persons who have made child rearing a battleground. *See generally, Walker,* 539 N.E.2d 509, 512 (set out above). We believe that the imposition of joint legal custody under the present circumstances is tantamount to the proverbial folly of cutting the baby in half in order to effect a fair distribution of the child to competing parents. *See generally, In re Custody of Banning* (1989), Ind. App., 541 N.E.2d 283 (dissenting opinion of Miller, J., 541 N.E.2d at 285). We wholeheartedly agree with the following words of wisdom expressed by Judge Hoffman in his dissenting opinion in *Lamb v. Wenning* (1991), Ind.App., 583 N.E.2d 745:

> The pitfall of awarding and maintaining a joint custody arrangement primarily to placate the [parents] should be avoided as not in the best interests of the child.

583 N.E.2d at 753.

As noted above, in sensitive situations such as the one in the case at bar, a more careful scrutiny of evidence is necessary. *Walker,* 539 N.E.2d 509. We must conclude that Julie has demonstrated, under the prima facie error standard, that the trial court's imposition of joint legal custody under the present circumstances constitutes an abuse of discretion.

Therefore, we must reverse and remand with instructions that the trial court enter an award of sole legal custody in favor of either Julie or Robert pursuant to I.C. 31–1–11.5–21. Just so there is no misunderstanding, our remand instructions do not contemplate that another evidentiary hearing be held.

Judgment reversed.

RATLIFF, C.J., and SHARPNACK, J., concur.