**In re the Marriage of Janice A. SWONDER (Allen), Appellant–Petitioner,**

**v.**

**James E. SWONDER, Appellee–Respondent.**

**No. 89A04–9312–CV–467.**

Court of Appeals of Indiana, Fourth District.

Nov. 21, 1994.

Wilson S. Stober, Amy L. White, Goodin & Kraege, Indianapolis, for appellant.

Gregory A. Horn, Harlan Schussler Boston Bever Horn & Hyde, Richmond, for appellee.

## OPINION

RILEY, Judge.

Petitioner–Appellant Janice A. (Allen) Swonder appeals the trial court judgment modifying a marriage dissolution decree which changes primary custody of her three sons to their father, James Swonder, in the event that she moves to Colorado.

We reverse and remand.

### ISSUE

Janice raises the following issue for our review: Did the trial court err when it found that a custodial parent's plan to move out-of-state presented a substantial and continuing change of circumstance such that the existing custody order was unreasonable, and conditioned continued custody on that parent's relinquishing plans to relocate?

## FACTS

Janice Swonder (Janice) and James Swonder (James) were married on August 14, 1971. The couple moved to Richmond, Indiana in 1978 to accommodate James's career plans. Twins were born to this marriage in 1980 and a younger son was born in 1984. Janice has not been employed outside the home since the couple moved to Richmond.

On October 9, 1991, the marriage was dissolved by a decree which incorporated an agreement of settlement. The agreement provided that Janice would have custody of the three children and James would have liberal visitation.

On June 21, 1993, pursuant to IND.CODE 31–1–11.5–21.1 (1993), Janice filed a notice of intent to change residence and told James of her intention to move with the children to Fort Collins, Colorado. The family had visited this location regularly since the couple was first married and it is a relatively short drive from the home of Janice's sister and her family.

In response, James filed a petition for modification of the original decree asking the court to award custody of the children to him. To ensure that Janice could not move the children before the modification hearing, James sought and obtained a temporary restraining order and a preliminary injunction. Janice agreed that she would delay her move and the parties entered into a related stipulation to that effect.

After two hearings at which the trial court heard evidence and interviewed the children in chambers, the trial court entered an order and memorandum on September 3, 1993, which stated, in part:

> The Court, having considered the evidence, arguments of counsel, trial briefs and written authorities submitted, and having interviewed each of the three children of the parties, finds that the proposed move of [Janice] to Fort Collins, Colorado and the resultant effect upon each of the three children, and the effects upon the welfare of each such child would constitute changed circumstances so substantial and continuing as to make the existing custody order unreasonable, so that custody of the minor children of the parties should then be granted to [James]

> IT IS THEREFORE ORDERED AND DECREED that the Dissolution of Marriage Decree previously entered is modified so that the same shall provide as follows, to-wit: the three minor children of the parties shall remain in [Janice]'s custody so long as [Janice] does not move to the State of Colorado; in the event [Janice] completes her intended move to the State of Colorado, then such minor children shall be placed in the custody of [James].

(R. 132). It is from this order that Janice appeals.

## DISCUSSION

Janice contends that the record is insufficient to support the trial court's order conditioning a modification of custody on her relocating to Colorado. She urges that this conclusion is not supported by statute, by precedent, or by sound public policy. In opposition, James asserts that the record contains "ample and sufficient evidence from which the trial court could, and did, logically conclude that the decisive change of conditions affecting the three (3) boys' welfare would occur if they were removed from the State of Indiana and their lifelong home." Appellee's Brief at 15.

A modification of custody is governed by I.C. 31–1–11.5–22(d), which requires that the trial court find a substantial and continuing change in circumstances has occurred which renders the original custody order unreasonable before a modification can be ordered.[1] A petition to modify custody is not a vehicle to relitigate the initial custody determination as to who might make the

---

1. On July 1, 1994, subsequent to the hearing in this case, I.C. 31–1–11.5–22 governing modification of custody was amended. *See* I.C. 31–1–11.5–22 (1994 Supp.).

better parent. *Walker v. Chatfield* (1990), Ind.App., 553 N.E.2d 490, 492. "Only a strict showing that the present custody arrangement is unreasonable will suffice to justify a change in custody." *Pea v. Pea* (1986), Ind.App., 498 N.E.2d 110, 113, *reh'g denied, trans. denied.* We require this strict showing to prevent the disruptive effect of moving children back and forth between divorced parents. *Drake v. Washburn* (1991), Ind. App., 567 N.E.2d 1188, 1189, *trans. denied,* 579 N.E.2d 31.

■ Our review of the trial court's decision is limited to determining whether the trial court abused its discretion in applying the applicable statutory guidelines. *Smith v. Dawson* (1982), Ind.App., 431 N.E.2d 850, 851. We neither reweigh evidence nor judge witness credibility and may only consider that evidence which supports the trial court's determination. *Winderlich v. Mace* (1993), Ind.App., 616 N.E.2d 1057, 1059, *reh'g denied.* We will reverse only upon a showing of a manifest abuse of the trial court's discretion and such abuse will only be found if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Simons v. Simons* (1991), Ind.App., 566 N.E.2d 551, 554.

■ In a petition to modify custody, the noncustodial parent bears the burden of overcoming the custodial parent's right to continued custody and must make a showing of a decisive change of conditions in the custodial home or a change in the treatment of the children in the custodial home which necessitates removal. *Id.* This change must be of a decisive, substantial, and continuing nature. *Walker,* 553 N.E.2d at 492. The trial court judge must consider the evidence with the best interest of the children uppermost in his or her mind as the paramount concern. *Pribush v. Roy* (1983), Ind.App., 456 N.E.2d 747, 749. It is the effect upon the children which renders any particular change substantial or inconsequential. *Ohman v. Ohman* (1990), Ind.App., 557 N.E.2d 694, 696, *reh'g denied, trans. denied.* Thus, the changed circumstances warranting modification must be of a

decisive nature, and such circumstances will support a modification order only if the modification is necessary for the welfare of the children involved, thereby conclusively establishing that the existing custody order is unreasonable. *Id.*

■ When a custodial parent intends to relocate outside the state of Indiana, he or she must file a notice of intent pursuant to I.C. 31–1–11.5–21.1. *Beeson v. Christian* (1991), Ind.App., 583 N.E.2d 783, 787. The statute imposes no burden of proof on the party intending to relocate, *Hoos v. Hoos* (1990), Ind.App., 562 N.E.2d 1292, 1294, and was not enacted to punish parents who move, but to provide a means for modifying visitation and support orders which would be made unreasonable because of a long distance move by the custodial parent. *Smith v. Mobley* (1990), Ind.App., 561 N.E.2d 504, *trans. denied* (dissenting opinion of Judge Miller, 561 N.E.2d at 509.). I.C. 31–1–11.5–21.1 must be construed in conjunction with I.C. 31–1–11.5–22(d) which requires the noncustodial parent to show a change in circumstances so substantial and continuing as to make the existing custody order unreasonable before custody may be modified. *Pea,* 498 N.E.2d at 114.

■ The fact that the move makes visitation inconvenient for the noncustodial parent does not of itself warrant a modification of the original order. *Lubeznik v. Liddy* (1985), Ind.App., 477 N.E.2d 947, 952, *reh'g denied, trans. denied.* The denial of continued custody, solely on the grounds of change in residence, is improper "where the move is being made in good faith and out of a desire to improve the material or psychological life of the custodian, so long as the child's interests are not prejudiced thereby." *Sebastian v. Sebastian* (1988), Ind.App., 524 N.E.2d 29, 33 (citing H. Clark, *The Law of Domestic Relations in the United States* Section 20.4 (2 ed. 1987)).

■ In 1992, Justice DeBruler wrote that whether an out-of-state move by the custodial parent is sufficient to satisfy the standard

depends on the facts of a particular case. *Lamb v. Wenning* (1992), Ind., 600 N.E.2d 96, 98. An out-of-state move is not, by itself, a substantial change of circumstances such as to make that parent's continued custody unreasonable, *In re Marriage of Poret* (1982), Ind., 434 N.E.2d 885, 890; however, the circumstances inherent in such a move are not necessarily insufficient as a matter of law to warrant modifying custody. *Lamb*, 600 N.E.2d at 99.

To determine that an existing custody order is 'unreasonable,' a trial court is not required to find that the present custodian is unfit or that the existing order is harmful to the welfare of the child. This determination may include all relevant factors, including changes in circumstances of both the custodial and noncustodial parents and the resulting and potential advantages and disadvantages to the child. The change in conditions must be judged in the context of the whole environment.

A move far away will significantly impact the relationship between the child and the parent without physical custody and severely hamper active participation of such parent in the child's upbringing.... It is the effect upon the child, however, that renders a change substantial or inconsequential. The child's welfare, not that of the parents, should be the primary concern of the trial court. Moreover, a change that might be regarded as slight or inconsequential in one case might be catastrophic in another.... For an older child who has formed friendships, attends school, and participates in activities or sports, is involved in church, or enjoys the security of supportive relationships with nearby relatives or others in his community, a move out of state may have a much more significant effect.

*Id.* (quotations and citations omitted). ▪

■ Our task then is to examine the evidence which supports the trial court's decision to see if there is evidence or inferences which support the trial court's decision that Janice's relocation to Colorado with her sons would affect the boys substantially and continually as to make the original custody order unreasonable. We note, initially, that there is no contention that Janice is not a good parent who is fully discharging her custodial responsibilities. James's claim for modification of custody is based upon the proposed geographic relocation and the relocation's effect on his sons; however, he does not contend that there is any difficulty with the new location, home, schools, or community that will adversely affect the children.

■ James contends that the children are experiencing stress due to the anticipation of the move. Janice testified that she had observed anxieties with the boys after they visited their father that was probably related to having to think about the potential move to Colorado. (R. 271). She also admitted that the boys had expressed to her a preference to remain in Indiana. (R. 166). However, James did not show, and Janice did not testify, that the boys' anxieties about the move was affecting them in a substantial way, nor that stress would continue to plague them once the move was completed.[2] Further, considering that a child's desire to live with the noncustodial parent is an insufficient change of conditions to warrant modification of custody, it follows that the trial court cannot compel the custodial parent to relinquish her plans to relocate because a child does not wish to leave his home town. *See Drake*, 567 N.E.2d at 1191. Thus, James did not show that the boys' anxiety about the Colorado move rises to the level of a significant change in circumstances upon which the trial court's modification order could be based.

James testified that the move would

2. When James was asked how the boys reacted to the potential move to Colorado, he testified that

Well, they're noticeably upset and off balance. You know, they've got this for sale sign out in the yard. They know that their mother's accepted an offer on the house. They're, you know, they've been, their behavior has been a little bit as a person would be is contemplating a move away from all their—pretty much, substantially all their relatives and all their friends, close friends, and their community. They've been a bit upset about it, yes. (R. 179).

sever substantially all their relations, close relations with their friends, their family, both extended family and the noncustodial parent. It would take them out of an environment which they have found to be their home ... It would, I'm sure, diminish their emotional stability.... They have a lot of friends. They have their pediatrician here.... [T]hey're looking forward to going back to school here."

(R. 187–88). These statements are conclusory in nature and by themselves do not prove that the move would be a "catastrophic" change for the boys. *Lamb,* 600 N.E.2d at 99. Except for stating that the boys have many friends and attend school in Richmond, he offers no proof that they "participate[ ] in activities or sports, [are] involved in church, or enjoy[ ] the security of supportive relationships with nearby relatives or others in [the] community" as suggested by *Lamb.*[3] *Id.* He offers no evidence that a new school, another church, and new playmates in Colorado would be somehow detrimental to the children's welfare in any way. Further, the Record shows that there is no extended family close by, and that James's parents and Janice's mother, with whom the boys visit with about six times a year, live across the state in Vincennes. The evidence offered on this issue does not present sufficient change to warrant a modification of custody.

In addition, the Court in *Lamb* stated that "one of the most significant elements of stability in a child's life is the child's primary caretaker—the person who cooks his meals, puts him to bed, and cares for him on a daily basis." *Lamb v. Wenning* (1992), Ind., 600 N.E.2d 96, 98; *see also Kuiper v. Anderson* (1994), Ind.App., 634 N.E.2d 556, 557–58, *reh'g denied* (statutes governing modification of custody support the policy of avoiding disruptive effects of moving children back and forth between parents). From the time

of her sons' births, Janice has been a homemaker and the primary care giver of her children. James has not proved that relocation would have any effect on her care. Further, although the trial court could not base its decisions upon the desire of the children, the boys expressed the definite preference to remain in Janice's custody and move rather than live with James in Richmond. (R. 302); *See also* (R. 269, 293).

James also testified that he felt that Janice was not properly motivating the boys in terms of their education. He testified that the boys did not bring books home from school when they stayed at his house. James also felt that the boys were "just goofing off in school." (R. 220). He related that at one parent-teacher meeting, he was told that one of the boys was not turning in his assignments. There is no evidence that these behaviors represent a substantial change from the time of the original order; neither is there evidence that Janice was ignoring the boys' problems in school. *See Drake,* 567 N.E.2d at 1190.

■ James contends that the trial court's decision should be upheld because

[t]he motivations in *Lamb* are not present in the case now before the Court [sic]. [Janice] has no need to move to improve her financial position.... Thus, a career or job change which may be a good faith and material basis for a move in other situations is not present here. [Janice]'s proposed move is not precipitated by a desire to live with a soon to be husband that will be the breadwinner for the family but that resides outside the State of Indiana. And, most importantly, the motivation for the move is not to improve the circumstances of the children. Rather, as [Janice] herself testified, it was time for her to "move on." [ (R. 153) ].

---

3. James's conclusory statements could not support a finding like that in *Hoos,* 562 N.E.2d at 1294, where the trial court concluded that relocation would "substantially impact the stability of the daughter's life by uprooting her from her home, community, school, friends and relatives. It would substantially interfere with the child's strong and affectionate relationship with her father and grandmother, and this would be exacerbated by the lack of relatives in California."

Appellee's Brief at 25.[4] This suggests that Janice had the burden to prove that her move was motivated by financial need, remarriage, or to improve the material circumstances of her family. Although each of these concerns might serve as a reason why a custodial parent might desire to move, neither statute nor precedent places any burden upon the custodial parent to show his or her motivation for a relocation. *See Lubeznik,* 477 N.E.2d at 962.

"The denial of custody solely on the custodial parent's decision to move is improper where the move is made in good faith and out of a desire to improve the material or psychological life of the custodian, so long as the child[ren]'s interests are not prejudiced thereby." *Sebastian,* 524 N.E.2d at 33. There is no evidence that Janice's motivation was to deny her former husband visitation or that she did not consider her children's welfare.[5] Janice's motivation for the move, which was voiced by a number of witnesses at the hearing, was a desire to start a new life for herself in another place. There is no evidence of record that this reason does not contemplate a move in good faith or that the move would prejudice the children in any way, and it supports the rationale that the move is proper if it is being made out of a desire to improve the psychological life of the custodian. Thus, modification of custody based on Janice's motivation to move is improper.

Finally, James states that this move would "sever the boys' relationship" with him. Appellee's Brief at 26. "Obviously, because of the relocation, [James] will be inconvenienced in his ability to exercise his authority and fulfill his responsibility. However, this inconvenience, standing alone, does not eliminate a Father's role." *Beeson,* 583 N.E.2d at 787. "Mere inconvenience to the child[ren]

and the noncustodial parent resulting from a change of residence will not constitute a basis for changing custody to the other parent." *Hoos,* 562 N.E.2d at 1294. James does not contend that the distance involved in the relocation will present a hardship and expense to him as noncustodial parent in exercising his visitation rights. Thus, a change of custody based on this contention is improper. *See Smith,* 561 N.E.2d at 506 ("The factors which are to be considered when determining whether to modify custody when the custodial parent indicates her intent to move out of state include the distance involved in the proposed change of residence and the hardship and expense involved for the noncustodial parent to exercise his visitation rights.").

Once a trial court determines that it is in the best interest of the children to place custodial responsibility in one of the parents, that parent is given the right and the duty to make decisions, and changes to the custodial order should only occur when things become unreasonable. After a review of the evidence most favorable to the trial court's decision, we do not find that there is either evidence or legitimate inferences from the evidence that indicates that the boys would not adjust to the move or that the move would have a detrimental impact upon their welfare. Thus, we hold that the trial court abused its discretion in continuing Janice's custody on the condition that she relinquish her intention to move to Colorado. As we noted in *Walker:*

what life is all about *is* growth and change. However, these changes, which we take for granted, do not automatically trigger the right of a court to re-examine whether or not one parent might be preferred as a custodian over another, as is the test at the initial hearing. Thus, mere changes that occur as life goes on do not, standing alone, justify a modification of custody.

---

4. When asked if there was a reason that Janice had to move from Richmond at the hearing, James replied: "No, none. She has no job, no husband out there, no, there's no need, there's no necessity for her to move out there." (R. 236).

5. When James was asked about Janice's motivation for the move, he testified that

She thought it would be a better climate, a healthful climate. She thought the schools were better, or more opportunity there. It was a growing community and that she wanted to move there.

(R. 179).

553 N.E.2d at 492; *see also* the dissenting opinions of Judge Miller in *Smith,* 561 N.E.2d at 511–15, and Judge Shields in *Hoos,* 562 N.E.2d at 1295–99.

The trial court abused its discretion and must be reversed. We remand to the trial court with instructions to enter an order consistent with this opinion.

Judgment reversed and remanded.

BARTEAU, J., and RATLIFF, Sr.J., concur.