Ronnie D. FRIDLEY, Appellant–
Respondent,

v.

Jama J. FRIDLEY, Appellee–
Petitioner.

No. 48A02–0012–CV–761.

Court of Appeals of Indiana.

June 6, 2001.

William Byer, Jr., Byer & Byer, Anderson, IN, Attorney for Appellant.

Patrick R. Ragains, Smith & Ragains, Anderson, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Ronnie D. Fridley appeals the trial court's denial of his petition to change custody after Jama J. Fridley filed a notice of intent to move to Arizona. Ronnie also contends that the trial court failed to give specific guidance on various issues surrounding visitation after the move occurred. Because we find that the trial court acted within its discretion in refusing to modify custody and establishing the visitation schedule, we affirm.

### Facts and Procedural History

The trial court issued its decree dissolving the marriage of Ronnie and Jama in 1997. Jama was awarded custody of their two children, and Ronnie was given visitation. Ronnie exercised his right to visitation regularly, visiting the children twice a week and every other weekend. On July 20, 2000, Jama filed a notice of intent to move with the trial court. Jama indicated that she was moving to Arizona for employment reasons. Jama had been employed with Anderson Community Schools as a school nurse, but lost her job due to a staff reduction. Jama applied for a similar position with a school corporation in Pendleton, Indiana, but was not offered the job.

Jama sought opportunities for employment in Arizona, after her boyfriend Barron Longstreth told her that there were openings in her field of nursing there, and apparently he was relocating there. Jama went to Arizona to interview and immediately accepted a school nurse position with a school district in Goodyear, Arizona. Jama moved to Arizona on July 18, 2000, with Longstreth and the children. She informed Ronnie of the move the night before she left Indiana. At the time of the move, their two children were eight and nine years old. Both children were involved in scouting with their father and participated in sports. The children also visited their extended family in the surrounding area.

On July 24, 2000, Ronnie petitioned the trial court for an emergency change in custody. The next day, Jama filed an Affidavit for Citation, alleging that Ronnie had failed to pay child support. On August 9, 2000, Ronnie filed to hold Jama in contempt because he was being denied visitation. Ronnie contended that he did not have contact with the children for one month after the move, and when he finally reached them, his phone conversations with them were impaired due to a problem with the phone.

After the court held a hearing on these issues, the court denied Ronnie's petition for change in custody. Although the court denied Ronnie's petition, the court devised a visitation schedule that provided Ronnie visitation during the Christmas holiday and summer vacation. Jama was to pay for the transportation costs during Christmas break, and Ronnie would not be obligated to pay child support during the ex-

tended visitation over summer vacation. Further, with respect to the alleged child support arrearage, the court found that it could not make calculations at that time to determine how much, if any, child support should be paid. Ronnie now appeals.

## Discussion and Decision

Ronnie contends that the trial court erred in denying his petition for change of custody. Ronnie also alleges that the court failed to give specific guidance in its visitation order with respect to transportation costs, specific visitation periods during summer break and Christmas, other holiday visitation schedules, and visitation while Ronnie is in Arizona. We address each argument in turn.

### I. Custody Modification

When a custodial parent relocates out of state, that parent must file a notice of intent to change residence pursuant to Ind.Code § 31–17–2–23.[1] The purpose of this notice is not to punish the custodial parent, but to provide the means for the trial court to modify visitation and support orders that may become unreasonable due to a long distance move by the custodial parent. *Swonder v. Swonder,* 642 N.E.2d 1376, 1380 (Ind.Ct.App.1994). Further, I.C. § 31–17–2–23 must be construed in conjunction with the child modification statutes. *Id.* The decision to modify custody rests within the discretion of the trial court and will be reversed only upon a showing of abuse of that discretion. *Hanks v. Arnold,* 674 N.E.2d 1005, 1007 (Ind.Ct.App.1996). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

Modification of custody is governed by Ind.Code § 31–17–2–21, which only allows modification if the trial court finds a substantial change in one of the factors listed in Ind.Code § 31–17–2–8 that has rendered the original custody order unreasonable and the modification is in the best interests of the children. *See also Swonder,* 642 N.E.2d at 1379. We require a strict showing that the present arrangement is unreasonable because we want to discourage the disruptive effect of moving the children back and forth between parents. *Id.* at 1380. The factors listed in I.C. § 31–17–2–8 include:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

    (A) the child's parent or parents;

    (B) the child's sibling;

    (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

    (A) home;

    (B) school; and

    (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic violence by either parent.

1. In the instant case, it appears that Jama actually moved within days before filing her notice of intent to move. However, Ronnie did not raise the timing of the notice as an issue at trial, and thus, it is not addressed in this appeal. We note, however, that Jama is fortunate that this issue was not raised at trial because her conduct, both in moving before the filing of the notice and failing to secure phone contact between the children and Ronnie after the move, exasperated the situation. This type of conduct keeps divorced parents at odds, and eventually, the children will also feel the effects of the tension.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

Here, Ronnie contends that the trial court erred in refusing to modify custody because Jama chose to move to Arizona with their children, making visitation with his children difficult. In particular, Ronnie argues that although Jama lost her job as a school nurse in Anderson, she could have obtained another nursing position in the surrounding area. Ronnie asserts that Jama really moved to Arizona to be with her boyfriend, Longstreth.

■■■ A custodial parent's move out of state, by itself, is not sufficient to support a change in custody. *Hanks*, 674 N.E.2d at 1007; *Swonder*, 642 N.E.2d at 1381. The analysis to evaluate whether a custody order is unreasonable as a result of a move out of state should focus upon the child's welfare, not that of parents. *Lamb v. Wenning*, 600 N.E.2d 96, 99 (Ind.1992). Thus, the determination depends on the facts of each case. *Id.* at 98. Moreover, an inconvenience to the non-custodial parent caused by the custodial parent's relocation out of state does not alone warrant custody modification. *Hanks*, 674 N.E.2d at 1008.

■ In the instant case, the trial court acted within its discretion in refusing to modify custody. Although some of the children's extended family is in Indiana and the children enjoyed cub scouts and playing little league in Anderson, the evidence in the record establishes that the children's move to Arizona has not been detrimental to their best interests. In fact, the children are very attached to their mother and are involved in sports, school programs, and church activities in Arizona. The evidence supports that there has not been a substantial change in cir-

cumstances rendering the current custody order unreasonable. Ronnie may have experienced some difficulty contacting the children when they first moved to Arizona due to a problem with Jama's phone. However, it appears that any problems have been remedied, and the trial court granted Ronnie visitation during school breaks in the summer and at Christmas time.

Ronnie spends a large portion of his brief placing blame on Jama for moving to Arizona to be with her boyfriend. Ronnie also relies upon *Sebastian v. Sebastian*, 524 N.E.2d 29 (Ind.Ct.App.1988) to allege that Jama's move was not in good faith because she could have found employment in the Anderson area. In *Sebastian*, our court recognized that as long as a change of residence is in good faith and out of a desire to improve the material or psychological life of the custodian and does not prejudice the child's interests, a change in custody is not warranted. *Id.* at 33. Here, Ronnie has failed to prove that the children's interests have been prejudiced by Jama's move. Further, Jama's relocation to Arizona was at least in part motivated by the need to find employment in her field with a flexible schedule to allow her to spend time with the children. Thus, we conclude that the trial court did not err in refusing to change custody.

## II. Indiana Parenting Time Guidelines

Ronnie also argues in the alternative, that if the trial court's order is upheld, that the case should be remanded to provide more specific guidance on visitation including transportation expenses and visitation schedules during holidays and when Ronnie is in Arizona. Ronnie maintains that the Indiana Parenting Time Guidelines should be applied to this case.

Initially, we note that the Indiana Parenting Time Guidelines did not become

effective until March 31, 2001. Consequently, the guidelines are not applicable to this case. However, even if we apply the guidelines to the present dispute, we find that the trial court served the purposes of the guidelines in issuing its visitation order. The Preamble to the guidelines states that "[t]he purpose of these guidelines is to provide a model which may be adjusted depending upon the unique needs and circumstances of each family." *See* Ind. Parenting Time Guidelines. Further, the Preamble stresses that parents should be flexible in their negotiations and recognize the variation that may occur in the needs of their developing children.

■ Here, the trial court provided guidance for the particular circumstances before it. The court gave the specific time periods of Christmas break and summer break when Ronnie's visitation would occur and ordered Jama to pay the transportation expenses incurred during the Christmas break. The court also abated Ronnie's child support for the summer vacation. More specifically, Section III of the guidelines discusses when distance is a major factor in parenting time. This section provides that a reasonable schedule should be established in light of special considerations such as transportation expenses, employment schedules, and summer vacations. By giving these specific orders, the trial court has complied with the guidelines regarding situations where distance is a factor.

Ronnie's argument seems to suggest that the trial court should have contemplated every possible scenario that might arise as a result of Jama's move to Arizona and address it in its visitation order. Placing such a burden on trial courts would serve to discourage the open communication and flexibility between parents that the guidelines seek to accomplish. There-

fore, the trial court did not err in issuing its visitation order.

Judgment affirmed.

ROBB and BROOK, JJ., concur.