**Valerie Raich BAXENDALE, Appellant–Petitioner,**

v.

**Samuel RAICH, Appellee–Respondent.**

**No. 64A05–0610–CV–624.**

Court of Appeals of Indiana.

May 15, 2007.

Rehearing Denied June 27, 2007.

B. Scott Skillman, B. Scott Skillman, P.C., Terre Haute, IN, Attorney for Appellant.

Thomas E. Rucinski, Sachs & Hess, P.C., Hammond, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Valerie Baxendale appeals the denial of her request to relocate to Minneapolis that resulted in the modification of the custody of her eleven-year-old son, A.R., to her ex-husband, Samuel Raich, III. We reverse.

### Issue

Baxendale raises three issues. We address one restated dispositive issue, which is whether the trial court properly modified custody.

### Facts

Baxendale and Raich were married in 1986. During the marriage they had two

children, S.R. and A.R. The couple divorced in 2000. Baxendale and Raich were awarded joint legal custody, and Baxendale was awarded physical custody of the children. Baxendale and Raich both lived in Valparaiso.

In 2001, Baxendale graduated from law school. She was employed in Chicago, but her position eventually was eliminated. In November 2005, Baxendale was offered a job in Minneapolis, Minnesota. She accepted the position, and on December 6, 2005, she filed her notice of intent to relocate from Valparaiso to Minneapolis. On January 11, 2006, Raich filed a petition to modify custody. In the spring of 2006, Baxendale moved to Minneapolis, and the parties agreed that eleven-year-old A.R. would live with Raich temporarily.[1]

On August 14, 2006, the trial court held a hearing on the custody issue. On September 1, 2006, the trial court issued an order denying Baxendale's request to relocate to Minneapolis with A.R., continuing the parties' joint legal custody of the children, and stating, "In the event [Baxendale] continues to reside in Minnesota, then [Raich] shall be the residential custodial parent. In the event [Baxendale] returns to Indiana she will be the residential custodial parent." Appellant's Br. p. 17. Baxendale now appeals.

### Analysis[2]

 Baxendale argues that the trial court improperly modified custody in favor

---

1. S.R. is in college, and his custody is not at issue.

2. To the extent Baxendale argues that the case should be remanded because the trial court did not issue findings of fact and conclusions thereon, this issue is not available for our review because it is invited error. "The doctrine of invited error is grounded in estoppel and precludes a party from taking advantage of an error that he or she commits, invites, or which is the natural consequence of his or her own neglect or misconduct."

*Balicki v. Balicki*, 837 N.E.2d 532, 541 (Ind. Ct.App.2005), *trans. denied*. At the conclusion of the hearing, the trial court asked if the parties felt findings and conclusions were necessary. Baxendale's attorney responded, "I don't think that's necessary, given the focus, the narrow focus that this case has had; but I won't speak for my colleague." Tr. p. 166. Because Baxendale's attorney specifically stated that findings and conclusions were not necessary, she may not now complain about the absence of such.

of Raich. Custody modifications are reviewed for an abuse of discretion, with a preference for granting latitude and deference to our trial judges in family law matters. *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind.2002). "We set aside judgments only when they are clearly erroneous, and will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." *Id.*

As an initial matter, we must first determine the appropriate standard to apply to this case. Effective July 1, 2006, the legislature repealed Indiana Code Section 31–17–2–4, which required the party seeking custody to file notice with the court if he or she intended to move outside of Indiana. In its place, the legislature adopted Indiana Code Chapter 31–17–2.2. Other than a passing reference to these changes, Baxendale makes no argument that these new statutes are not applicable. In the absence of such an argument and because the changes became effective on July 1, 2006, before the August 14, 2006 custody hearing, we will assume that these changes apply in this case.

Chapter 2.2 addresses the effect of a parent's relocation on child custody determinations. For example, Indiana Code Section 31–17–2.2–1 provides in part:

(a) A relocating individual must file a notice of the intent to move with the clerk of the court that:

(1) issued the custody order or parenting time order; or

(2) if subdivision (1) does not apply, has jurisdiction over the legal proceedings concerning the custody of or parenting time with a child;

and send a copy of the notice to any nonrelocating individual.

(b) Upon motion of a party, the court shall set the matter for a hearing to review and modify, if appropriate, a custody order, parenting time order, grand-

parent visitation order, or child support order. The court shall take into account the following in determining whether to modify a custody order, parenting time order, grandparent visitation order, or child support order:

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

Further, "[t]he relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason." Ind.Code § 31–17–2.2–5(c). "If the relocating individual meets the burden of proof ..., the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interests of the child." I.C. § 31–17–2.2–5(d). Finally, "The court may consider a proposed relocation of a child as a *factor* in determining whether to modify a custody order, parenting time order, grandpar-

ent visitation order, or child support order." I.C. § 31–17–2.2–2(b) (emphasis added).

In every modification case, the person seeking to modify custody must show that modification is in the child's best interests and there is a substantial change in one or more of the factors that the court may consider under Indiana Code Section 31–17–2–8. I.C. § 31–17–2–21. These factors include:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

I.C. § 31–17–2–8.

■ Notwithstanding the recent statutory changes regarding relocating custodial parents, we believe that Indiana Code Section 31–17–2–21 applies when modification is sought based on a custodial parent's relocation. This conclusion is based on the longstanding principle that "permanence and stability are considered best for the welfare and happiness of the child." *Lamb v. Wenning,* 600 N.E.2d 96, 98 (Ind. 1992) (citing *Adams v. Purtlebaugh,* 230 Ind. 269, 275, 102 N.E.2d 499, 502 (Ind. 1951)). Now, however, Chapter 2.2 provides additional guidance when considering a request to modify based on a custodial parent's relocation.

■ Although a move most certainly affects a child's sense of stability and permanence, the extent of such varies from case to case. *See Lamb,* 600 N.E.2d at 99. An out of state move "is not per se a substantial change of circumstances such as to make that parent's continued custody unreasonable ... [but] that does not mean that the circumstances inherent in such a move are always insufficient as a matter of law to warrant modifying custody." *Id.* at 98–99. In determining whether modification is required, a trial court must consider all relevant factors, "including changes in circumstances of both the custodial and noncustodial parents and the resulting and potential advantages and disadvantages to the child. The change in conditions must be judged in the context of the whole environment." *Id.* at 99.

■ In this case, it is clear that both parents love A.R. and are able to more than adequately care for him. Raich, however, has not shown that a change in custody is required because he has not established that there has been a substantial change in circumstances and that modification is in A.R.'s best interests.

Although a move is, indeed, a change in circumstances, we cannot conclude that under these circumstances the move was a *substantial* change. Baxendale testified that she chose an apartment in Minneapolis that was pet friendly and that had children's activities so it would be similar to her home in Valparaiso. She stated that she wanted A.R. to be "as similarly situated as possible." Tr. p. 109. She also testified that A.R. was enrolled in a private school in Minneapolis and that he had

attended a few camps at the school over the course of the summer. She testified that A.R. takes cooking classes and plays chess, the guitar, and basketball. She also stated, however, that A.R. "never interacted with his friends other than at school." Tr. p. 69. She also indicated that A.R. had made friends with two other children in the apartment complex. Given A.R.'s age and the evidence of Baxendale's effort to make the transition as seamless as possible, Raich has not shown that the move would create a substantial change in one or more of the circumstances listed in Indiana Code Section 31–17–2–8.

Further, Raich did not establish that relocation was not in A.R.'s best interests. At the hearing, Baxendale testified that the position she held prior to accepting the job in Minneapolis had been eliminated and that she was unemployed for fourteen months. She testified that she tried to get a job in Chicago, but was unsuccessful. Upon hearing that Raich's business was experiencing financial difficulties in the summer of 2005, she decided to expand her job search. It was only then that she considered the job in Minneapolis that had a starting salary of $135,000 per year. Baxendale has established that the move was made in good faith for a legitimate reason. *See* I.C. § 31–17–2.2–5(c).

Accordingly, the burden shifted to Raich to show that moving was not in A.R.'s best interests. *See* I.C. § 31–17–2.2–5(d). Raich argues that he "met his burden by proving he can provide more stability and permanence for A.R." Appellee's Br. p. 19. In considering stability in the modification context, our focus is not necessarily on who can provide more stability in the future—that is not to say there are not circumstances in which that is a valid consideration—but generally, our focus is on maintaining the existing custody arrangement so as to provide ongoing stability.

When our supreme court considered what standard should apply to a request to change the child's primary residence under a joint legal custody arrangement, it concluded:

> One of the most significant elements of stability in a child's life is the child's primary caretaker—the person who cooks his meals, puts him to bed, and cares for him on a daily basis. It is certainly likely in joint custody arrangements that both parents are more involved in rearing a child. Still, when a child lives primarily with one parent under joint custody, a modification which sends a child to live with the other parent may have the same effect, as far as the child is concerned, as a traditional change in custody.

*Lamb,* 600 N.E.2d at 98.

Here, it is undisputed that prior to February 2005, Baxendale was A.R.'s primary physical custodian. Although staying in the same school and the same neighborhood would contribute to A.R.'s stability, it has been Baxendale who cooked his meals, put him to bed, and cared for him on a daily basis.

Also, the distance from Valparaiso to Minnesota, is considerable, but within a short flight. Since Baxendale moved to Minneapolis, A.R. has been flying from Chicago to Minneapolis every other weekend to maintain regular visitation with Baxendale. The evidence shows that the parties have the financial means to continue a similar arrangement, with A.R. flying from Minneapolis to Chicago to visit Raich. Further, although Baxendale and Raich's relationship is acrimonious, they appear to have maintained a somewhat regular visitation schedule since Baxendale's move. Thus, in considering the factors of Indiana Code Section 31–17–2.2–1(b), A.R. would be able to maintain frequent visitation with

Raich even if he relocated to Minneapolis with Baxendale.

Finally, although the trial court did not issue findings and conclusions, we can deduce from the trial court's order that its decision to change custody was solely based on Baxendale's relocation. We reach this conclusion because the trial court ordered Raich to have physical custody if Baxendale moved and allowed Baxendale to regain physical custody if she returned to Indiana. *See* Appellant's Br. p. 17. Thus, all that prevented Baxendale from retaining physical custody of A.R. was the location of her residence.[3] "A custodial parent's move out of state, by itself, is not sufficient to support a change in custody." *Fridley v. Fridley*, 748 N.E.2d 939, 942 (Ind.Ct.App.2001); *see also Swonder v. Swonder*, 642 N.E.2d 1376, 1381 (Ind.Ct.App.1994). The trial court abused its discretion when it modified custody based solely on Baxendale's relocation to Minneapolis.

## Conclusion

The trial court abused its discretion by modifying custody of A.R. based solely on Baxendale's move to Minneapolis. We reverse.

Reversed.

NAJAM, J., and RILEY, J., concur.

---

[3]. To that end, Raich's extensive arguments regarding Baxendale's lack of monetary contributions to the children's education and other financial issues are not relevant to our consideration today. This is especially true given that at the hearing Baxendale's attorney explained the parties were not prepared to proceed on the financial issues and Raich's attorney did not object. In fact, the trial court specifically proceeded "on the issue of whether or not the Court should enter an order allowing the relocation modifying the order to allow relocation of the boy to Minnesota." Tr. p. 10.