Gerry Ray ROGERS, Appellant–Respondent,

v.

Laura Lynn ROGERS, Appellee–Petitioner.

No. 79A02–0708–CV–711.

Court of Appeals of Indiana.

Nov. 20, 2007.

error, we affirm the judgment of the trial court.

Timothy J. O'Hara, George T. Patton, Jr., Curtis T. Jones, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellant.

Christine A. DeSanctis, Lafayette, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Today we are asked to decide whether the trial court properly exercised its discretion in permitting a mother to move from Lafayette to Texas and retain physical custody of her two children in accordance with our Relocation Statute.[1] Under the circumstances here, we hold that the trial court correctly determined that the mother complied with the provisions of the Relocation Statute and properly found that the children's father failed to establish that the move was not in the children's best interests.

Appellant-respondent Gerry Ray Rogers (Gerry) appeals the trial court's modification of a custody order that was entered in favor of his former wife, appellee-petitioner Laura Lynn Rogers (Laura), which permitted the relocation of the parties' minor children to Texas. Specifically, Gerry argues that the order approving the relocation was erroneous because Laura purportedly failed to comply with the requirements of the Relocation Statute. Moreover, Gerry claims that the evidence established that relocation was not in the best interests of the children. Finding no

## FACTS

Gerry and Laura were married on June 12, 1993, and two children were born of the marriage. A.L.R. was born on October 3, 1996, and A.R.R. was born on December 16, 1998. Gerry and Laura raised both of the children in Lafayette. At some point, A.R.R. was diagnosed with immune deficiency, and she struggled with constant sickness in her younger years. A.L.R. suffers from Tourette syndrome, is treated by a psychiatrist, and sees counselors on a regular basis in Lafayette.

Gerry and Laura separated in June 2000, and in August 2004, they entered into a property settlement agreement and dissolution decree, where they were granted joint legal custody of the children with Laura having physical custody of the children. More specifically, the decree provided that "[t]he parties shall have joint legal custody of the minor children. Wife shall have physical custody, and Husband shall have visitation pursuant to the Indiana Parenting Time Guidelines. If there is a disagreement regarding education or medical care, Wife shall have the right to make the ultimate decision." Appellant's App. p. 27–28. Gerry was granted visitation pursuant to the Indiana Parenting Guidelines.

Gerry was ordered to pay child support in the amount of $500 per week and was to maintain health insurance coverage for the children. Gerry was also ordered to pay 100% of all uninsured medical, dental, hospital, optical, orthodontic, counseling, and prescription drug expenses for the children. Additionally, the trial court ordered Gerry to pay Laura $500 per week under the property settlement agreement.

---

1. Indiana Code § 31–17–2.2–1 et seq.

Following the divorce, Gerry regularly exercised his parenting time with the children and continued to be active in their lives, including soccer and baseball coaching. Gerry also occasionally transported the children to their activities and sporting events. However, the evidence established that Gerry viewed the children's health and education primarily as Laura's responsibility.

In March 2006, Laura informed Gerry that she was considering a move to Texas. Laura believed that she would be able to rely more on her family in Texas than on Gerry for the girls' medical and childcare needs. As a result, Laura listed her home in Lafayette for sale. During the summer of 2006, the children lived with Gerry every Monday, Tuesday, and Wednesday, and every other weekend. When school began in the fall of 2006, the children continued to live with Gerry on those days except for Tuesday.

On December 22, 2006, Laura filed a pro se notice of intent to move to Texas. Laura has extended family in northern Texas, including her father, brother, sister, stepbrother, and cousins, along with their respective spouses and children. Among the reasons for relocating, Laura indicated that she wanted to help take care of her father, who had undergone lung surgery in February 2006. Laura also stated that she would be able to obtain assistance from other family members in Texas to help with the girls and to provide the children with the traditions with which she grew up. Laura indicated that she and the girls would move in with her father after she sold her house in Lafayette.

When Laura filed her notice, she was earning approximately $12,000 per year and worked twenty hours per week at Ivy Tech Community College in Lafayette. She worked part time with flexible hours so that she could take the children to doctors' appointments and meet their special medical needs. Gerry is the president and owner of several businesses in Lafayette and earns a substantial income.

On February 23, 2007, Gerry filed an objection to the relocation and a motion for temporary and permanent custody of the children. Gerry also moved to strike Laura's notice of intent to relocate because she purportedly failed to meet the requirements of the Relocation Statute. On April 5, 2007, Gerry petitioned the trial court to order the parties to submit to a custody examination and evaluation. The custody evaluator ultimately found that a move to Texas would disrupt the children's routine, subject them to stressful air travel, and impair their relationship with Gerry. Thus, he concluded that the move would not be in the girls' best interest.

On May 16, 2007, Laura made an offer to purchase a house in Corinth, Texas, which was accepted five days later. The residence has five bedrooms and is located in a suburban neighborhood. Laura subsequently closed on the sale on June 4, 2007. On July 5, 2007, Laura took the children with her to visit some friends in Michigan and subsequently drove to Texas.

When Laura arrived in Texas, she obtained full time employment at the University of North Texas, where she earned approximately $12.50 per hour. Because a teacher shortage existed in Texas, it developed a streamlined teacher certification program. In accordance with that program, Laura passed a number of examinations certifying her eligibility for a fulltime teaching position. The evidence established that Laura is likely to obtain permanent employment there.

The trial court conducted a final hearing that concluded on July 31, 2007. At the hearing, Theresa Slayton, the children's

therapist, testified that the children should remain in counseling. Slayton acknowledged that the girls had a close bond with Laura and that she had been their primary caregiver who was responsible for meeting their needs during childhood. Slayton determined that the girls were looking forward to the move and testified that they would be able to make the necessary adjustments even in light of A.L.R.'s Tourette syndrome. Slayton believed that additional evaluation and treatment could occur in Texas. It was further established that when the children have been in Texas with Laura, they have adjusted to that environment. In particular, the girls have met other children in the neighborhood, have enjoyed playing with their cousins, and they attended gymnastics camp for a week.

Laura testified that she would return to Indiana if prohibited from relocating to Texas with the children. Laura believed that she could sell the residence in Corinth at a profit and then purchase a new house in Lafayette because housing is readily available there.

Following the hearing, both parties submitted proposed findings of fact and conclusions of law at Gerry's request. On August 15, 2007, the trial court issued nearly twenty pages of findings. Among those findings, the trial court determined that the children "have a loving relationship and solid bond with both of their parents." Appellant's App. p. 18. Moreover, the trial court found that "both parents love and care for the children and that both parents are appropriate and able to serve as the custodial parent of the children." Id. at 21. However, the trial court determined that

5. Former Husband has not met his burden. The crucial question is whether the stability of the children will be undermined by the move.

Perhaps the most important factor is the stability of continued custody with the same parent. See Lamb v. Wenning, 600 N.E.2d 96, 98 (Ind. 1992). Here, the Former Wife's stability will be promoted, rather than undermined by the move. She is moving to a specific location where she has strong family ties, where she is able to (and in fact has) purchased a home, where she has specific employment plans and is likely to maintain those employment plans. This is by contrast to other cases where relocation has caused a change of custody where the mother is moving to an uncertain, less stable situation. E.g., Bettencourt v. Ford, 822 N.E.2d 989, 999 (Ind.Ct.App. 2005); Green v. Green, 843 N.E.2d 23, 24–25 (Ind.Ct.App.2006). A second factor, and the most important factor, is the children's stability in their lives. The children's activities are of the type that can easily be replicated in suburban Dallas. The Children's health care needs are not so severe that continuity of treatment is required. The children are young enough that they can easily make new friends, and the Former Wife reports that they have made new friends in the new location. Furthermore, there are stronger family connections on the Former Wife's side in Texas than here in Indiana, and there are also strong family connections on the Former Husband's side in the new location. The move does not disrupt a multi-generational Indiana family; the parents both came from Oklahoma and during their marriage moved first to Florida before moving to Indiana. There is no reason to believe that the children will not be able to adjust to, and thrive in, the

new community. Having a happier custodial parent should promote their emotional health. The final factor, which always suffers in a relocation, is the relationship between the children and the non-relocating parent. Certainly, there will be less opportunity for contact and visitation will be more inconvenient. However, both parents are financially well-off and are able to afford the expense of visitation. [Citation omitted]. There is no reason to think that the children will forget their father or that their father will be unable to remain a strong influence in the children's life at this distance.

Appellant's App. p. 25–26.

The trial court then entered an order determining, among other things, that 1) Gerry failed to meet his burden of proof that the relocation is not in the best interests of the children; 2) Gerry's motion to prevent the relocation of the children is denied; 3) Laura's notice of intent to move is approved; 4) Gerry shall have parenting time with the children pursuant to the Indiana Parenting Time Guidelines where distance is a factor and at such other times as the parties may agree; 5) Laura shall pay for the children's travel to the State of Indiana for two visits per year; and 6) each party shall pay their own attorney fees.

On August 17, 2007, Gerry filed a notice of appeal in the trial court and an emergency motion to stay the enforcement of the trial court's order. After the trial court denied the motion to stay, he filed an emergency motion to stay pending appeal in this court. This court granted a temporary stay of the trial court's order and held oral argument on August 21, 2007, regarding Gerry's request for a permanent stay. Following the argument, this court—by a vote of 2–1—denied Gerry's request for an emergency stay pending the disposition of this appeal, but unanimously ordered an expedited briefing schedule. This appeal ensued.

## DISCUSSION AND DECISION

### I. Standard of Review

We initially observe that the trial court entered findings of fact and conclusions of law at Gerry's request. Our standard of review of special findings pursuant to Indiana Trial Rule 52(A) mandates that we first determine whether the evidence supports the findings and then whether the findings support the judgment. *Borth v. Borth,* 806 N.E.2d 866, 869 (Ind.Ct.App. 2004). Because the trial court is charged with determining the credibility of the witnesses, the findings or judgment will not be set aside unless clearly erroneous. *Id.* Clear error exists where the record does not offer facts or inferences to support the trial court's findings or conclusions of law. *Id.*

Next, we note that custody modifications are reviewed for an abuse of discretion, with a "preference for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson,* 622 N.E.2d 178, 178 (Ind. 1993). We will set aside judgments in custody modifications only when they are clearly erroneous, and we will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Id.* at 179. Our Supreme Court explained the reason for this deference in *Brickley v. Brickley,* 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965):

While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line

of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

Therefore, on appeal it is not enough that the evidence might support some other conclusion, but it must positively require the result sought by the appellant before there is a basis for reversal. *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind.2002).

## II. Gerry's Claims

### A. Compliance With Relocation Statute

Gerry first claims that the trial court's judgment must be set aside because the evidence established that Laura failed to comply with the requirements of the Relocation Statute. Among other things, Gerry argues that Laura's notice to relocate was invalid because she did not present good faith or legitimate reasons for moving the children to Texas.

In resolving this issue, we first note the relevant provisions of the Relocation Statute:

(a) A relocating individual must file a notice of the intent to move with the clerk of the court that:

(1) issued the custody order or parenting time order . . .

. . .

(b) Upon motion of a party, the court shall set the matter for a hearing to review and modify, if appropriate, a custody order, parenting time order, grandparent visitation order, or child support order. The court shall take into account the following in determining whether to modify a custody order, parenting time order, grandparent visitation order, or child support order:

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

Ind.Code § 31–17–2.2–1. The trial court "may consider a proposed relocation of a child as a factor in determining whether to modify a custody order, parenting time order, grandparent visitation order, or child support order." I.C. § 31–17–2.2–2(b). Also, in accordance with Indiana Code section 31–17–2.2–3:

(a) Except as provided in section 4 of this chapter, an individual required to file a notice under IC 31–14–13–10 or section 1 of this chapter must:

(1) send the notice to each nonrelocating individual:

(A) by registered or certified mail; and

(B) not later than ninety (90) days before the date that the relocating individual intends to move; and

(2) provide the following information in the notice:

(A) The intended new residence, including the:

(i) address; and

(ii) mailing address of the relocating individual, if the mailing address is different than the address under item (i).

(B) The home telephone number of the new residence.

(C) Any other applicable telephone number for the relocating individual.

(D) The date that the relocating individual intends to move.

(E) A brief statement of the specific reasons for the proposed relocation of the child.

(F) A proposal for a revised schedule of parenting time or grandparent visitation with the child.

(G) A statement that a parent must file an objection to the relocation of the child with the court not later than sixty (60) days after receipt of the notice.

(H) A statement that a nonrelocating individual may file a petition to modify a custody order, parenting time order, grandparent visitation order, or child support order.

Finally, we note that Indiana Code section 31–17–2.2–5 provides that

(a) Not later than sixty (60) days after receipt of the notice from the relocating individual under IC 31–14–13–10 or this chapter, a nonrelocating parent may file a motion seeking a temporary or permanent order to prevent the relocation of a child.

(b) On the request of either party, the court shall hold a full evidentiary hearing to grant or deny a relocation motion under subsection (a).

(c) *The relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason.*

(d) *If the relocating individual meets the burden of proof under subsection (c), the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child.*

(Emphases added).

■ In examining the above, it is apparent that the trial court is confronted with two inquiries under the Relocation Statute. As noted above, the relocating individual must first establish that the relocation is made in good faith and for a legitimate reason. If the relocating individual satisfies that burden, the burden shifts to the non-relocating parent to show that the proposed relocation is not in the best interests of the child. Here, because Laura desires to move with the children, it is her burden to show that her proposed relocation is made in good faith and for a legitimate reason. I.C. § 31–17–2.2–5. Gerry is then required to demonstrate that the move is not in the children's best interests.

■ We note that the purpose of the notice of intent to relocate is to provide a means for modifying visitation and support orders that would be made unreasonable because of a long distance move by the custodial parent. *Swonder v. Swonder,* 642 N.E.2d 1376, 1380 (Ind.Ct.App.1994). Previously, the relocating parent had no burden of proof, *id.,* yet the new statute requires a showing of good faith and legitimate reasons for the move. Moreover, while prior case law determined that relocation by itself cannot be the basis of a

change of custody, the current state of the law permits an examination of the facts and circumstances of the specific case in determining the question.

We have had the occasion to construe the provisions of the Relocation Statute in *Baxendale v. Raich,* 866 N.E.2d 333 (Ind. Ct.App.2007), *trans. pending.*[2] In *Baxendale,* the evidence showed that the parties were divorced and lived in Valparaiso. Baxendale—the mother of the parties' two minor children—graduated from law school and was employed in Chicago. Baxendale was granted physical custody of the children, and her position in Chicago was eventually eliminated. After Baxendale accepted a new position in Minneapolis, Minnesota, she filed her intent to relocate from Valparaiso to Minnesota. *Id.* at 335. Thereafter, temporary custody of the parties' eleven-year-old child was placed with Raich until the trial court held a hearing on the matter addressing the relocation and custody issues. *Id.*

Following the hearing, the trial court entered an order continuing the parties' joint legal custody; however, it determined that if Baxendale continued to reside in Minnesota, Raich should be the residential custodial parent. Moreover, the trial court held that if Baxendale returned to Indiana, she would be the residential custodial parent. *Id.*

In analyzing the relocation statute, we determined that in every custody modification case, the party seeking to modify custody must establish that the modification is in the child's best interest and there is a substantial change in one or more of the factors that the court may consider under the custody statute.[3] *Id.* at 337. Thus, we

concluded that the trial court abused its discretion in modifying custody based solely on Baxendale's relocation to Minnesota because a custodial parent's move out of state—by itself—is not sufficient to support a change in custody. *Id.* at 339. We also noted that although the move amounted to a change in circumstances, it was not a substantial change. As a result, we determined that Raich failed to meet his burden to show that the move was not in the child's best interest because the focus is on maintaining the existing custodial arrangement so as to provide ongoing stability. *Id.* at 338.

■ Turning to the circumstances here, we note that Laura filed her initial pro se Notice of Intent to Relocate in December 2006 when she placed her Lafayette residence on the market. That notice informed Gerry that she intended to relocate to Texas after her house was sold, and, although she did not have a permanent address in Texas at the time, she would be staying with her father. Appellee's App. p. 39. Laura also provided Gerry with her cell phone number. *Id.*

Thereafter, Laura amended her Notice of Intent to Move after obtaining counsel and included the information regarding her offer to purchase a residence. Although this transaction was never consummated, Laura purchased a subsequent residence in Corinth, Texas, that was within several miles of her father's house. *Id.* Once Laura and the children moved, Gerry maintained daily telephone contact with the girls. Tr. p. 404. Moreover, Laura invited Gerry to visit the girls in the new home.

2. Although the Notice of Intent to Move was filed prior to the effective date of the new statute in *Baxendale,* the hearing in the trial court occurred after that date. Therefore, the

*Baxendale* court considered the provisions of the new statute.

3. *See* Indiana Code § 31–17–2–8.

In essence, there is no evidence in the record showing that Laura—at any time—tried to hide her move from Gerry or ever refused to provide him with any details that he requested regarding the proposed move. Moreover, Gerry never claimed that he was unaware of the children's whereabouts. Thus, Gerry's claim that the relocation order must be set aside because Laura failed to substantially comply with the relocation provision fails.

██ Likewise, we reject Gerry's contention that Laura failed to show that her proposed relocation was being made in good faith and for a legitimate reason. Laura testified that one of the reasons she wanted to move was so that she and the girls could be closer to her family. Indeed, Laura testified that "my daughters deserve to have family attend their activities, they deserve to have interaction with family, and they don't get it from Gerry's brothers." Tr. p. 26. Moreover, Laura testified that she has no extended family in Indiana and that her father was ill and wanted to be closer to him and to her brother and his family. *Id.* at 27. Laura also maintained that her family would be able to help if the children are sick or if she is going through a stressful time with the girls.

Laura also asserted in her Notice of Intent to Relocate that the proposed move would financially benefit her. As noted above, she has pursued teaching opportunities in Texas and has taken advantage of the teacher certification program available there. *Id.* at 70. Laura completed various programs in Texas that permitted her to teach, and she passed examinations that would allow her to teach special education classes. The evidence showed that Laura's salary as a teacher would amount to approximately $38,000 per year, and she believed that a teaching position would benefit her and the girls because her work

schedule would be the same as the girls' school schedule. *Id.* at 365, 367. Laura explained that because she can earn a full time salary, she will be in a better position to meet the children's needs than she was when she earned a part-time salary in Lafayette. *Id.* at 72.

Laura also testified that there were no fulltime positions available at Ivy Tech when she left her position there. Moreover, she acknowledged that she would not have any help with the children if she had accepted fulltime employment in Lafayette. Finally, Laura testified that if the trial court did not grant her request to relocate to Texas, she planned to either sell or rent the residence that she purchased in Corinth and return to Indiana so that she could remain with the girls. Tr. p. 68, 88.

In light of these circumstances, we conclude that Laura satisfied her burden of proof that her proposed relocation was made in good faith and for a legitimate reason under the Relocation Statute.

### B. Best Interests of the Children— Gerry's Burden

██ Gerry next claims that he met his burden of proof in demonstrating that the relocation to Texas was not in the children's best interests. Gerry maintains that the evidence established that he should have physical custody of the children if Laura moved to Texas in light of the factors set forth in the Relocation Statute. In essence, Gerry argues that he successfully showed that it is in the children's best interests for him to have custody if Laura relocates.

██ We note that in every modification case, the person seeking to modify custody must show that modification is in the child's best interests and there is a substantial change in one or more of the factors that the court may consider under

Indiana Code section 31–17–2–8. These factors include:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

　(A) the child's parent or parents;

　(B) the child's sibling; and

　(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

　(A) home;

　(B) school; and

　(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

We also note that a custodial parent's move out of state, by itself, is not sufficient to support a change of custody. *Fridley v. Fridley,* 748 N.E.2d 939, 942 (Ind.Ct.App. 2001).

In this case, the evidence established that the trial court thoughtfully and thoroughly considered Gerry's request for a custody modification if, in fact, Laura's proposed move to Texas was approved. The trial court specifically observed that the crucial question was whether the stability of the children would be undermined by the move. And it noted that "[Laura] has moved into a specific location where she has strong family ties, where she is able to and has, in fact, purchased a home and she has specific employment plans to teach in the Texas school system." Appellee's App. p. 25. Although the trial court

noted that the children participated in various activities in Lafayette, the evidence established that they could participate in similar activities in Texas. The trial court also found in light of the evidence that was presented that the children could easily make new friends, and had, in fact already established friendships in the new neighborhood.

The evidence also supported the trial court's determination that both parents were financially able to afford the expense of visitation—even in light of the distance factor. And Gerry submitted no evidence showing that there would be any hardship in exercising parenting time if Laura was permitted to relocate with the girls. Moreover, the evidence did not show that the possibility of a move would affect the girls in a substantial manner. As noted above, Slayton, the children's therapist, testified that the girls "appeared to be very accepting in regards to the move and were looking forward to it." Tr. p. 320. Slayton believed that a move to Texas would not impede the children's ability to obtain counseling or receive medical treatments. *Id.* at 309. Moreover, Sheryl Davis, A.R.R.'s teacher, testified that she did not have concerns about the possibility of A.R.R. moving to Texas for the next school year. Indeed, Davis observed that A.R.R. appeared excited about moving. *Id.* at 187. Additionally, Eileesh Leuck, the counselor at Mintoyne School where the girls attended in Lafayette, expressed that her concerns for the children were the same as for any children moving and believed that they would be fine with the move. *Id.* at 158. In essence, Leuck observed that A.L.R. did not seem to be "stressed" about moving to Texas. *Id.*

Finally, Gerry's emphasis on the custody evaluator's recommendation that the "children should continue living in Indiana as their home base," appellant's app. p. 61,

amounts to a request for us to reweigh the evidence and judge the credibility of the witnesses—a task in which we do not engage. In our view, the trial court reasonably concluded that Gerry failed to establish that the relocation was not in the girls' best interests. Therefore, Gerry's claim fails.

The judgment of the trial court is affirmed.

BAILEY, J., concurs.

KIRSCH, J., dissents with opinion.

KIRSCH, Judge, dissenting.

How can depriving children of the presence of their loving and caring father in their daily lives be in their best interests?

My colleagues conclude that Father failed to carry his burden that Mother's relocation to Texas was not in the best interests of his children without raising or answering this question. To me, it is of paramount importance. These children's father will not be there to attend their birthday parties, school functions, recitals, concerts, science fairs, athletic contests, and extracurricular events. Their father will not be there for parent-teacher conferences. Their father will not be there to take them to school in the morning or to pick them up in the afternoon. Their father will not be there for their doctor and dentist appointments. Their father will not know their teachers, and he will not know their friends. Their father will not be there as they move into and through adolescence with all of its attendant challenges.

The choice before the trial court and here is not a custody determination between parents who live in different places. Mother said she would not move if the trial court denied it. Rather, the choice is between whether the children should live in the same community as both of their parents or should live with one parent several hundred miles away from their other parent. To me, the better choice is obvious.

The preamble to the Indiana Parenting Guidelines states that the Guidelines "are based on the premise that it is usually in a child's best interest to have frequent, meaningful and continuing contact with each parent. It is assumed that both parents nurture their child in important ways, significant to the development and well being of the child." Mother's move to Texas will make such contact and such nurturing impossible.

I respectfully dissent.